MARSHALL and others *vs.* THE NEW YORK CENTRAL RAIL
ROAD COMPANY.

Where two kinds of property—one perishable and the other not—are delivered to a carrier, at the same time, by different owners, for transportation, if the carrier can not carry all the property, he may give preference to the perishable property, over that which is not perishable; and if either must wait, it should be the latter.

When a carrier has received property for transportation, if he is liable for any loss or injury resulting from delay in its transportation or otherwise, while

Marshall *v.* New York Central Railroad Company.

in his possession, such damages are to be appraised or fixed at the place of destination of such property. And the place of destination, in this sense, must, in the absence of any express contract to deliver it at a particular place, be where the route of the carrier ends.

The defendant, being a common carrier from Buffalo to Albany, agreed with the plaintiffs to transport a quantity of apples, in barrels, from Alden and Corfu, two of its stations, to Albany, and there deliver them to the Swiftsure line. The barrels were directed to the plaintiffs, in the city of New York, care of the Swiftsure line, Albany. *Held* that the duty of the defendant ended when it had delivered the property to the plaintiffs' consignee, at Albany, and that such delivery was equivalent to a delivery to the plaintiffs at that place.

The apples, thus agreed to be transported, were purchased for the New York market, which was known to the carrier. And having been delivered by the carrier to the Swiftsure line, at Albany, they were immediately forwarded to New York, and the barrels having been opened there, the apples were found to be injured by the frost, in consequence of the delay which had occurred. *Held* that assuming that the plaintiffs' damages should have been assessed at the value or depreciation of the apples at Albany, proof of such value or depreciation in the New York market was proper, as furnishing a satisfactory basis upon which the jury could estimate the damages of the plaintiffs at Albany.

And that in the absence of any proof or allegation that there was any difference in the value between the two places, or that the property was injured or depreciated after it left Albany, it would be proper to instruct the jury that they might find the value of the apples to be their value as proved, at New York, deducting the freight from Albany to that city.

THE plaintiffs are co-partners and dealers in apples in the city of New York. In August, in 1860, Jacob P. Marshall, one of the plaintiffs, in company with Luther T. Norton, their agent, came to the counties of Genesee and Erie to contract for fruit. They went to the agents of the defendants at Alden and Corfu and made arrangements with them to ship apples by rail from those stations. Norton was authorized to purchase and ship for the plaintiffs. On the 10th September, 1860, Norton wrote the agent of the defendants as to the terms of shipment, and received a reply on the 3d October, 1860. Norton received more definite instructions as to the rates of shipment. This last letter was shown to the defendants' agents at Alden and Corfu. Apples were after that delivered at Alden and Corfu, which were placed

where the defendants' agent directed. They were to be shipped when requested. The first of October, 1860, the agents of the defendants were requested to ship the apples. The division superintendent, Mr. Collamer, was also called on and letters written him. No cars were sent till the 24th of November, 1860. The weather was cold. It froze hard that night. Precautions were taken by the plaintiffs' agents to prevent the effect of frost. The apples, when they reached New York, were badly frozen. They were not worth over half a dollar a barrel, while if not frozen they would have been worth $2. The apples were sent, subject to charges, which the plaintiffs paid. The payment to the defendants, however, was made under protest. This action was brought to recover damages for the injury done to the apples in consequence of the negligence and delay of the defendants. It was tried at the Ontario circuit, before a jury. The defendants endeavored to show that the omission to carry sooner was caused by a great influx of freight. It appeared, however, that nearly all this was received after the plaintiffs' apples were delivered, and that it was not perishable property. The rates for this were about the same as for apples. The defendants were interested in a line of propellers on lake Erie, and gave preference to freight brought by the boats. Collamer, the superintendent, frequently promised to send cars for the apples, and had power to do so. The defendants offered to show an influx of freight at a particular station, which was excluded by the court. It also appeared that after the apples were shipped by the defendants, certain receipts were given to Beebe, the agent, to ship, but he had no power to contract, and the contents of the receipts were not known to Norton or the plaintiffs. At the close of the evidence the defendants' counsel moved for a nonsuit, which motion was denied. To the refusal to nonsuit and to portions of the charge, the defendants' counsel excepted.

The jury found for the plaintiffs, for $7,532.44, and the defendants appealed from the judgment entered upon the verdict.

Marshall *v*. New York Central Railroad Company.

*A. P. Laning,* for the appellants.

*E. G. Lapham,* for the respondents.

*By the Court,* E. DARWIN SMITH, J. The questions presented for our decision in this case arise upon exceptions taken during the progress of the trial, and to the charge of the Circuit Judge in submitting the cause to the jury.

The first exception taken was to the decision of the Circuit Judge in overruling the question put to the witness Garvin, one of the defendants' agents, asking him if he had any authority from the company to make a contract to ship freight at any particular time or specific time. I do not think this exception well taken. If the plaintiffs' right of recovery rested upon an express contract, that contract was not made by this witness, but with Wemple, the general freight agent of the defendants. The plaintiffs' agent Norton showed to the witness a letter from Wemple, directed to said agent, saying that he was at liberty to ship apples from any station on the line of the defendants' railroad subject to changes, if consigned to the Swiftsure line, Albany. Norton showed this letter to Garvin, who was a mere subordinate agent of the defendants, and he said he would ship the apples as requested. This was no bargain by Garvin, and could not have been so understood or considered. It was merely a recognition of the authority of Wemple to direct on the subject; and an assent on his part to comply with the instructions thus given by Wemple. It was of no kind of consequence what authority Garvin had in fact. He made no bargain. He merely undertook to fulfill the instructions of his superiors.

Another exception is to the exclusion of evidence offered to show large accumulations of freight at Batavia and Lockport in the month of November, 1860. This evidence was merely cumulative. I can see no objection to it, otherwise. A large amount of evidence to the same effect was given, and

the fact sought to be established by such proof was abundantly established by the defendants, so that I can not see that they were, or could be, in any way injured by the exclusion of this testimony. The exceptions to the refusal of the judge to nonsuit the plaintiffs are, I think, not well taken. The case, when the plaintiffs rested, was clearly one for the jury. The same points then made were subsequently raised upon exceptions to the charge, and will be considered in that connection.

The first exception to the charge presented on the argument was that the judge erred in charging the jury that preference was to be given to perishable property. The proposition in the charge excepted to is as follows : "Where two kinds of property are delivered at the same time by different owners, one of which kind is perishable and the other not, preference is to be given to that which is perishable in transportation, and if either must wait, it must be that which is not perishable."

I do not see in the evidence any particular occasion for the statement of such a proposition. It seems to me that it was a mere abstract remark not essential to the case, and one which could not have done any injury if erroneous. But I am not prepared to say that it was erroneous. It merely affirms as most reasonable, what the defendants proved to have been the practice of the agents of the company. A witness for the defendants, (Gates,) the clerk of the superintendent of the western division of the defendants' railroad, testified that there was a greater demand for cars during the month of November, 1860, than there had ever been at any previous month, and that "Mr. Collamer, (the superintendent,) made it a rule to give perishable property a preference if possible."

This, it seems to me, was a very rational rule, and as the duty of the defendants rested upon the ground of reasonable diligence in the transportation of property, and their liability for loss and injury resulting from delay in the transmission

of property, could only be predicated upon proof and a finding that they neglected to transport such property within a reasonable time after its receipt. The question how the carrier was employed, and how he used and employed his means of transportation, during any given period when property was delayed, would always be a proper subject of inquiry, and that on this inquiry proof that his means of transportation were employed in transporting perishable property in preference to other property received at the same time, would always be held a sufficient excuse for delay. The judge so states the rule. The preference, as he states it, is between property received at the *same time.* If the carrier in such case can not carry all the property received, it seems to me that he may give preference to the perishable property over that not perishable, and that the giving of such preference can not be matter of complaint, but rather would be a matter of duty on his part, in such a case. I therefore do not think that this exception should be allowed.

The next exception to the charge is that the court erred in holding that if the witness Beebe had no authority to make a contract for the shipment of the property, then the delivery of the receipts to him should not bind the defendants to the exceptions or limitations of liability therein expressed. The judge charged the jury, that if the receipts referred to were the contracts upon which the defendants took the property, then the defendants were not liable. This left to the jury the question when the receipts were given, and for what purpose. It was proved by the witness Beebe that they were not delivered to him till after the property was shipped. These receipts, it seems to me, should be regarded, and were properly found to be, mere receipts for the property, and not contracts in respect to its transportation. The contract for the transportation, I think, was made by Norton with Wemple, and not by Beebe with Garvin, and the jury must so have found; and the view

taken of these receipts by the Circuit Judge I think entirely correct.

The remaining exception urged upon us on the argument, relates to the rule of damages adopted at the circuit. The plaintiffs were allowed, under objection and exceptions, to show what the value of the apples in question was when they were received in New York, frozen, &c. and what it would have been if they had not been injured by frost at the time of their receipt by the plaintiffs in that city. I have had some difficulty with these exceptions. The defendants were carriers from Buffalo to Albany. Their railroad ends at Albany, and they do not seem to have made any contract, or to have incurred any duty that is established in the case, other than to transport these apples to Albany and there deliver them to the Swiftsure line, the consignee named and designated by the plaintiffs. Their duty ended when they had duly delivered the property to the plaintiffs' consignee at Albany, and such delivery was equivalent to a delivery to the plaintiffs at that place. When a carrier has received property for transportation, if he is liable for any loss or injury resulting from delay in its transportation or otherwise, while in his possession, such damages are to be appraised or fixed at the place of destination of such property. And the place of destination, in this sense, must, I think, in the absence of any express contract to deliver at a particular place, be where the route of the carrier ends. But this property was purchased for the New York market, and this was known to the defendants. It was delivered by them to the Swiftsure line at Albany to be forwarded to New York, and was immediately forwarded to that city, and within a few days was received there by the plaintiffs, they paying the freight from Albany. The barrels were then opened and examined, and the condition of the apples and the injury to them from frost fully ascertained. Such injury could not fully have been determined at an earlier period. These facts all appeared at the trial. The question then is, assuming that the

damages should have been assessed at the value, or depreciation of the apples at Albany, whether proof of such value or depreciation in the New York market was inadmissible and error. I think it was not, and that it was an element or species of evidence on the question of damages, and probably the best the case afforded. It furnished a pretty clear and satisfactory basis upon which the jury could estimate the damages of the plaintiffs at Albany. If there was any difference of value between the two places, or the property was injured or depreciated after it left Albany, the defendants might have proved it. There is not in the case any proof of the kind, nor any suggestion to that effect ; and for aught I can see in the case, I think it would have been entirely proper for the Circuit Judge to have instructed the jury that they might find the value of these apples to be their value, as proved in New York, deducting the freight on them from Albany to New York, and make any other allowance which they thought proper for the difference in value between the two places. This would be a fair method of estimating their value, and I can not see why it would not be a proper mode or rule for estimating damages in all such cases. ( *Vide Wemple* v. *Stewart,* 22 *Barb.* 154 ; 5 *Denio,* 56 ; 8 *Wend.* 435.) I think no exception could have lain to such a direction ; and as it does not appear what was the precise direction of the Circuit Judge on this question of damages, and no error is alleged in respect to such instruction, I think we must assume that it was entirely satisfactory to both parties, on this subject. And in this view, and upon this ground, also, I think these exceptions may be and should be overruled. If my brothers concur in these views, the judgment should be affirmed.

Judgment affirmed.

[MONROE GENERAL TERM, March 5, 1866. *Welles, E. D. Smith* and *Johnson,* Justices.]