BYRON SHERMAN et al., Respondents, *v.* THE HUDSON RIVER RAILROAD COMPANY, Appellant.

It is the duty of a common carrier, not only to transport, but to deliver or offer to deliver, goods to the consignee within a reasonable time. Where the consignee is unknown, a reasonable and diligent effort to find and notify him of the arrival is a condition precedent to a right to warehouse the goods. If such effort be not made the carrier is liable for the damages resulting from the neglect.

The measure of damages is the difference in the value of the goods at the time and place they ought to have been delivered and the time of their actual delivery; in fixing the time when delivery should have been made, where there is no charge of negligence in transportation, a reasonable time after arrival should be allowed for delivery.

In the case of the transportation of property over several railroads constituting a connecting line, neither company is agent of the owner; each exercises an independent employment as a contractor with the owner and is responsible for its own negligence, and it cannot make the owner responsible for the negligence of a connecting road.

*It seems*, that if, in an action for negligence, tried by a referee, an express finding of fact that defendant was guilty of negligence is necessary to uphold a judgment, a finding to that effect, although included in the conclusions of law, is sufficient.

Certain bales of cotton owned by plaintiffs were shipped at C., consigned to "Byron Sherman," New York. They were delivered to defendant at

A., by a connecting line, with a freight bill in which was stated the number of and the marks upon the bales, but the consignee's name was given as "Ryan Sherman." The cotton was transported by the defendant to New York; the name of the consignee was changed by it in its entries and bills to "Ryan & Sherman." Not finding such a firm defendant warehoused the cotton. Byron Sherman called at defendant's freight office in New York, about the time of the arrival of the cotton, and several times thereafter, with the bill of lading containing the number of bales and marks thereon which he exhibited, and inquired for the cotton, but could obtain no information. In an action for negligence, *held*, that plaintiff was entitled to recover; that the evidence was sufficient to justify a finding that the delay and consequent injury was caused solely by defendant's mistake; that while defendant was only chargeable with its own negligence plaintiff could not be made responsible for the negligence of the connecting line.

(Argued February 9, 1876; decided February 22, 1876.)

APPEAL from judgment of the Court of Common Pleas in and for the city and county of New York, affirming a judgment in favor of plaintiff, entered upon the report of a referee. (Reported below, 5 Daly, 521.)

This action was brought against defendant as common carrier to recover damages for alleged negligence and delay in the delivery of thirteen bales of cotton.

The referee found, in substance, that plaintiff's agents at Cairo, Illinois, shipped the cotton by the Illinois Central Railroad, consigned to an agent of a connecting line at Chicago, to be forwarded to New York. That the bales, at the time of delivery, were marked with a diamond, in which were the letters F. B. Said road executed and delivered to the agents a receipt or bill of lading giving the number of bales and describing them by said mark, with the words "to be forwarded all rail to Byron Sherman, 41 Warren street, New York," which bill of lading was forwarded to plaintiff. That said cotton was transported to Albany and there received by defendant from the New York Central Railroad Company, a bill of charges accompanying it in which the name of the consignee was stated as "Ryan Sherman," but in other respects the cotton was described as in the bill of lading.

That defendant changed the name of the consignee to Ryan & Sherman and transported the cotton to New York, where it held it for delivery to Ryan & Sherman. The cotton arrived in New York December 14, 1864. Defendant kept it in its possession until December twenty-first, when it stored it with warehouseman. " That the defendants made no effort to find any consignee of said cotton, except Ryan & Sherman ; they made some inquiries for this firm, but these were limited to such persons as came to their depot, and they mailed a notice in the New York post-office of the arrival of this cotton, addressed to such firm of Ryan & Sherman, New York city, but they did not make any effort to find or notify of its arrival Ryan Sherman or Byron Sherman." That the consignee Byron Sherman (one of the plaintiffs), received the receipt, and after a reasonable time for the transmission of the cotton to New York, hearing nothing of it, he went to the general freight office of the defendant, at the corner of Warren street and College place, in New York city, and showed said receipt to the parties having charge of the freight business, and made inquiries for this cotton ; that he made applications there repeatedly during the month of December aforesaid, and also during the January following, of a person to whom he was there directed by the employes of the defendant as a proper person of whom to make inquiries; that he told such person when the cotton left Cairo, and that it was due and past due in New York, and on each occasion of his inquiry, exhibited the receipt or bill of lading and that he received no information, and could get none respecting the cotton ; that said cotton was not delivered to the consignee, and he heard nothing of it until on or about the 6th day of February, 1865, when he was notified at his store No. 41 Warren street, by a person from the warehouse, that the cotton was there, and the same was on such day delivered on his order to the commission merchants in New York of the plaintiffs, by whom it was afterwards sold for their account. That after the arrival of such cotton in New York, it depre-

ciated in value, and that the difference in the market value of it at the time of its delivery and the time when it should have been delivered was $2,674.50. As a conclusion of law the referee found " that the defendants were guilty of negligence, and are liable in damages to the plaintiffs for the loss on such cotton, and for the amount of the expenses and charges paid to the warehouseman."

*Samuel Hand* for the appellant. Defendant was not guilty of negligence in refusing to deliver the cotton to Byron Sherman. (*Hempstead* v. *N. Y. C. R. R. Co.*, 28 Barb., 486, 501; *McIntee* v. *N. J. Stmbt. Co.*, 45 N. Y., 34.) Defendant having transported the goods and made unavailing efforts to notify the consignee named, its responsibility as carrier ceased. (Redf. on Railways, § 127; *Thomas* v. *Bost. R. R. Co.*, 10 Metc., 472; *Witbeck* v. *Holland*, 45 N. Y., 17; *Parsons* v. *Hardy*, 14 Wend., 215; *Pelton* v. *R. and S. R. R. Co.*, 54 N. Y., 215; *Northrop* v. *S. and B. R. R. Co.*, 2 Tr. Apps., 183.) The negligence of plaintiffs and their representatives having caused or contributed to defendant's failure to deliver to the true consignee, plaintiffs could not recover, even assuming negligence in defendant. (*Nelson* v. *H. R. R. Co.*, 48 N. Y., 498; *Rawson* v. *Holland*, 59 id., 617; Redf. on Carriers, § 52; 28 Barb., 485; *Ont. Bk.* v. *N. J. Stmbt. Co.*, N. Y. C. P., February, 1874; *Taylor* v. *Gt. N. R. R. Co.*, L. R., 1 C. P., 385.) Defendant was not liable for damages arising from non-delivery of the cotton, during the time it kept the goods to ascertain the owner. (45 N. Y., 34.)

*Henry N. Beach* for the respondents. A carrier is bound to transport goods to their destination and deliver them within a reasonable time to the consignee or owner, by giving notice of their arrival. (*Kent* v. *H. R. R. Co.*, 22 Barb., 278; Ang. on Car. [2d ed.], § 283; Story on Bailments, § 545 *a; Fenner* v. *B. and S. L. R. R. Co.*, 44 N. Y., 509; *Witbeck* v. *Holland*, 45 id., 13; *McDonald* v. *West. R. R. Co.*, 34 id., 501; *Rowland* v. *Miln*, 2 Hilt., 150; *Fisk* v. *Newton*, 1

Den., 47; *Zinn* v. *N. J. Stmbt. Co.*, 49 N. Y., 445.) Defend-
ant's mistake, in the name of the consignee, did not excuse
its negligence. (*Read* v. *Spaulding*, 30 N. Y., 630, 645; 3
Bosw., 395, 408; *Caldwell* v. *N. J. Stmbt. Co.*, 47 N. Y., 282.)
The measure of damages was the difference in the value of
the cotton at the time and place it should have been deliv-
ered, and at the time of the actual delivery. (*Ward*
v. *N. Y. C. R. R. Co.*, 47 N. Y., 29; *Zinn* v. *N. J. Stmbt.
Co.*, 49 id., 445; *Griffin* v. *Colver*, 16 id., 489; 22 Barb., 293;
Redf. on Railways, chap. 26, § 167; Sedgw. Meas. of Dam.,
372.) The concurrent acts of plaintiffs and defendant could
not contribute to the same injury. (*Zinn* v. *N. J. Stmbt. Co.*,
49 N. Y., 446.)

EARL, J. The cotton was shipped from Cairo, consigned
to "Byron Sherman, 41 Warren street, New York." The
thirteen bales were all marked with the capital letters, " F.
B.," in a diamond figure; and these marks as well as the
direction to the consignees were upon the shipping bill issued
at Cairo, and forwarded to and received by the plaintiffs in
due course of mail. The cotton reached Albany by the New
York Central railroad, and by its agents was delivered to the
defendant to be transported to New York and delivered to the
consignees. Upon delivering to the defendant, the agents of the
New York Central Railroad Company delivered with the cot-
ton a freight bill containing the back charges on the same, the
number of bales and the marks upon the bales, in which the
consignee's name was mentioned as " Ryan" Sherman instead
of "Byron" Sherman. This freight bill gave the only infor-
mation the defendants received as to the destination and con-
signee of the cotton. The cotton was immediately trans-
ported to New York, and reached there on the 14th day of
December, 1864. The defendant changed the name of the
consignee to Ryan & Sherman, and in that name made its
entries and made out its bills. Not finding these supposed
consignees, it kept the cotton until December twenty-first,
when it stored the same, for the supposed consignees, with

Mulligan & Dudley, warehousemen. The consequence was that plaintiffs did not find or receive the cotton until February sixth. In the mean time there had been a large decline in the price of cotton, and this action was brought to recover damages, for the delay in delivering the cotton, suffered by the decline in the price thereof.

It is the duty of a carrier to transport goods committed to him in a reasonable time, and if from mere negligence or a plain violation of duty he omits to transport them beyond a reasonable time, and their market value falls in the mean time, the true rule of damages is the difference in their value at the time and place they ought to have been delivered and the time of their actual delivery. (*Ward* v. *The New York Central Railroad Co.*, 47 N. Y., 29.) It is not only his duty thus to transport the goods, but he has not performed his contract as carrier until he has delivered or offered to deliver them to the consignee, or done what the law esteems equivalent to delivery. When the consignee is unknown to the carrier a due effort to find him and notify him of the arrival of the goods is a condition precedent to the right to warehouse them; and if a reasonable and diligent effort is not made, the carrier is liable for the consequences of the neglect. If, in the mean time, the goods depreciate in value, the rule of damages is as above stated. (*Zinn* v. *The New Jersey Steamboat Co.*, 49 N. Y., 442.) If plaintiffs' case comes within these rules and no rule of law was violated upon the trial, the recovery was right and must be upheld.

The appellant alleges several grounds of error which we will proceed to examine separately:

1. The referee does not expressly find, as matter of fact, that the defendant was guilty of negligence — that is, there is not such a finding among the findings of fact. But among the conclusions of law there is a finding that the defendant was guilty of negligence, and if an express finding of fact that the defendant was thus guilty were necessary to uphold this judgment, this would be deemed sufficient. A finding of negligence is, generally, an inference from many facts — from

all the evidence in the case; and when it is found in the report of a referee, no matter where it is placed, it must be deemed his inference from all the evidence submitted to him upon the question. Besides, the facts found here warrant the finding of negligence, and would justify no other conclusion. The agents of defendant were clearly misled by their own mistakes in changing the name of the consignees to Ryan & Sherman and inquiring only for them. If they had retained the name of Ryan Sherman as consignee they would probably have found Byron Sherman. But there was no excuse for not delivering the cotton to Byron Sherman when he called for it; he called about the time of the arrival of the cotton, and several times during the months of December and January, at the general freight office, and had with him the bill of lading forwarded to him by mail, which contained his name as consignee, the true number of bales with the marks on them, and exhibited it to defendant's agents in charge of such office and inquired for his cotton and could obtain no information about it. The probabilities are very strong that but for the mistake of changing the name of the consignee to Ryan & Sherman, the discovery would have been made, when Byron Sherman first called, that he was the consignee. The referee was, therefore, fully justified in finding that the delay in the delivery of the cotton was caused by the negligence of the defendant.

2. It is claimed that the mistake of the New York Central Railroad Company, in giving to the defendant the name of Ryan Sherman as consignee, caused the mistake of defendant, or contributed to that mistake, and that plaintiffs cannot, therefore, recover, as the former company was their agent for the delivery of the cotton to the defendant. An answer to this claim is, that there is no such finding; the referee based his final conclusion of law upon the negligence of defendant, and the evidence tended strongly, if not irresistibly, to show that plaintiffs' damage was caused solely by its negligence.

In the case of transportation of property over several railroads constituting a continuous line, none of the roads can

be said to be agents of the owner; each is exercising an independent employment, and is a contractor with the owner, the contract being either express or such as the law implies; each is responsible for its own negligence; and, while the owner may lose by the negligence of either, he can in no proper sense be made responsible for such negligence. In this case the defendant could only be made responsible for the damage caused by its own negligence; and such was the decision of the referee.

3. It is claimed that the referee allowed too much damage. The proof showed that this cotton was worth, per pound, on the day of its arrival, December fourteenth, one dollar and thirty-three cents; December seventeenth, one dollar twenty-eight cents; December twenty-first, the day the cotton was warehoused, one dollar twenty-five cents, and February sixth, the day of its delivery, eighty-two cents. The referee allowed plaintiff fifty cents per pound in making up the amount of damage awarded; this was a liberal allowance, as defendant should have been allowed a reasonable time for delivery, and the damage should have been computed from the lapse of such time. But before judgment the plaintiffs deducted from their recovery the sum of $745.54; and after such deduction their recovery was only at the rate of forty-two cents per pound; and such a recovery was fully warranted by the evidence. In this respect, therefore, the defendant has no reason now to complain.

The judgment must, therefore, be affirmed, with costs.

All concur. ALLEN, J., not sitting.

Judgment affirmed.