## Case No. 6,180.

### HARVEY v. GRAND TRUNK RY. CO.

[2 Hask. 124.] [2]

Circuit Court, D. Maine.    Dec., 1876.

#### CARRIERS—OVERCHARGES — MEASURE OF DAMAGES —EVIDENCE.

1. The measure of damages for the refusal of a carrier to transport freight at an agreed price, is the difference in value of the same at the ports of shipment and delivery, less the agreed freight and other necessary charges of transportation.

2. A carrier, in the absence of special contract, may demand and recover a reasonable sum as freight for the transportation of merchandise and no more.

3. Evidence, showing the charges of a carrier for freight two years previous to the charges in controversy for like freight, is competent upon the question of the reasonableness of the charges demanded, when the costs of transportation meantime have not increased.

Assumpsit for the breach of a special contract to transport merchandise at an agreed price, and to recover exorbitant charges exacted for the transportation of merchandise and paid by compulsion in order to obtain the same from the carrier. The case was tried upon the general issue, and the verdict was for plaintiff [William Harvey], whereupon the defendant moved for a new trial for misdirection by the court.

Orville D. Baker and Joseph Baker, for plaintiff.
John Rand, for defendant.

Before SHEPLEY, Circuit Judge, and FOX, District Judge.

FOX, District Judge. In November, 1871, the defendants, by their written contract, agreed with the plaintiff to transport for him over their road from Warwick, in Canada, to Portland, at certain agreed rates per car, various kinds of timber, including posts, for the period of one year.

Relying on this contract, the plaintiff hauled to the line of the road, in the winter of 1871–72, 10,000 cedar posts, and in the spring repeatedly notified the proper agents of the defendant that he wanted these posts taken to Portland under the contract; but the company refused so to do; and as there was no other means of transporting them from Warwick than the railroad of the defendant, they became almost worthless, as there was no market for them at Warwick. Some few were sold for small sums, but little or nothing was realized from the lot, and they became nearly a total loss. So far as appeared in evidence, this breach of contract by the defendant was wanton and without excuse.

The jury upon this portion of the case were instructed as follows: That the damages were to be estimated at Warwick, and so far as the market value of the posts was involved, their value at Warwick should be taken by the jury; that this value would be their value at that place, if the company had performed its contract and not broken the same by refusing transportation of the posts; that in ascertaining their value, they might take into consideration the market value of the posts at Portland, what could have been realized from them sold as posts by plaintiff, deducting the freight and other

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

[2] [Reported by Thomas Hawes Haskell, Esq., and here reprinted by permission.]

charges of transportation from Warwick to Portland, and that from their value thus found at Warwick should also be deducted whatever sums were realized by plaintiff from sale of the posts, and also whatever might have been realized by him from their sales by due care and diligence as a prudent man having charge of the property; that the net sum, thus found by the jury, after these deductions, they would be authorized to find as the damages if they saw fit, and add interest thereto.

The defendant now moves for a new trial on the ground that this ruling was erroneous. It is insisted that the damages were to be found as at Warwick, as the defendant there broke his agreement by not having commenced the transportation of the goods from that place, the breach being there and at that time. It is said the damages were there sustained and should be there estimated. This view was adopted at the trial by the presiding judge, as in the commencement of the charge on this point, the jury were told that the damages were to be estimated at Warwick, and the value of the posts, so far as their value was involved, was their value at Warwick.

No objection is now urged to this portion of the charge; but it is said that the residue of the instructions is entirely inconsistent with what preceded it, and that the jury were afterwards instructed to find the value of the posts at Portland, and then estimate the damages; but we fail to discern this inconsistency. The jury were told that the value of the posts would be their value at Warwick, if the defendant had performed its contract and not broken the same by refusing transportation; that in ascertaining this value, they might take into consideration their market value at Portland, what could have been realized from them, sold as posts, deducting expenses of transportation; that from this value, whatever was or could have been realized by due care, etc., from their sale, should be deducted and the net sum thus found, they would be authorized to fix as damage if they saw fit.

There being no sale for these posts at Warwick, and no means of transporting them from there, of course there was no means of ascertaining their market value at that place, except by determining what they could have been sold for at other places, and deducting the expenses which would be incurred in carrying them to such places.

There was no evidence before the jury to show that in any place, nearer than Portland, a market could have been found for so large a quantity of this material; and under the circumstances, as the jury were compelled to go elsewhere than Warwick to find a market for these articles, we think they were at liberty to take into consideration the value of these goods at Portland, and what would have been received from them there if they had been carried there by

the defendant; and that as elements in determining the damages at Warwick, all those matters presented in the charge were proper subjects for the consideration of the jury on the question of damages. The whole was submitted to them to act upon and adopt, so far as they were in accord with the judgment of the jury, in order to determine, after all, what was the actual damage the plaintiff had suffered at Warwick by the defendant's not complying with his contract.

The plaintiff was entitled to exact an indemnity from the defendant. Relying upon this written agreement, he had placed upon the line of the railroad this large amount of property, trusting to its being taken to Portland. Where it then was, it was comparatively of but little worth; if taken to the place stipulated, when there, it at once became of great value; and this additional value was given it entirely by reason of its change of locality. By giving as damages the difference in value between these two places, less cost of transportation, has the plaintiff received anything more than the goods were worth to him at Warwick, as they were piled at the roadside?

By reason of the defendant's contract with plaintiff to carry this particular parcel of posts, they became at once of much greater value than any similar parcel belonging to other parties, which could neither be sold at Warwick nor removed from there for want of an agreement with the railroad thus to transport them. There is nothing of uncertainty in adopting this basis for arriving at the damages sustained by plaintiff through the defendant's misconduct, but it is a matter of absolute demonstration; and if the plaintiff had been desirous of disposing of the posts at Warwick, he would have claimed as their fair real value to him what he would have obtained for them if he could have forwarded them to Portland under defendant's agreement, less the stipulated freight; and he would have been fully warranted in so doing.

In Marshall v. New York Cent. R. Co., 45 Barb. 508, an action for not transporting certain apples from Buffalo to New York, the defendant having carried them as far as Albany and there delivered them to another carrier to take to New York, the court says: "The question is, assuming that the damages should have been assessed at the value, or depreciation of the apples at Albany, whether proof of such value and depreciation in the New York market was inadmissible and error. I think it was not, and that it was an element or species of evidence on the question of damages, and probably the best the case afforded. It furnished a pretty clear and satisfactory basis upon which the jury could estimate the damages of the plaintiffs at Albany; * * * and for aught I can see in the case, I think it would have been entirely proper for the circuit

judge to have instructed the jury that they might find the value of these apples to be their value as proved at New York, deducting the freight on them from Albany to New York, and making any other allowances which they thought proper for the difference in value between the two places. This would be a fair method of estimating their value, and I cannot see why it would not be a proper mode or rule for estimating damages in all such cases." This rule is also approved in Richmond v. Bronson, 5 Denio, 55.

If the defendant's views are correct that the damages were to be estimated at Warwick, we are of opinion that he has no reason to complain of the instructions which were given to the jury; but, from an examination of the authorities, it is by no means certain that a different rule should not be adopted in an action of this description, when the carrier has actually received the article and failed to transport and deliver it at the place of destination, and when having contracted to receive and carry it, he refused so to do, or to take any measures for its transportation. The distinction between the two cases, which was recognized at the trial by the judge, does not appear to have been approved by other tribunals; and although good reasons may be assigned in its behalf, it is directly in conflict with the following authorities: Bracket v. McNair, 14 Johns. 170; O'Conner v. Forster, 10 Watts, 418; Bridgman v. The Emily, 18 Iowa, 511; Cowley v. Davidson, 13 Minn. 93 [Gil. 86]; Nourse v. Snow, 6 Me. 208.

In each of these cases the defendant failed to receive and carry the merchandise as he had agreed; and in all of them, the measure of damages was held to be the difference between the value of the articles at the place of intended shipment, and their value at place of destination, less the freight and other expenses; and the same rule is approved in Laurent v. Vaughn, 30 Vt. 90, and Galena & C. U. R. Co. v. Rae, 18 Ill. 488.

If the instruction given the jury is fairly susceptible of the construction put upon it by the defendant, it is sustained by all these authorities; none are adduced in opposition thereto, and the court is well satisfied, that in no aspect of the case, can the defendant have suffered any detriment by the directions given as to the rule of damages.

Another claim made by the writ is for the recovery of a large sum paid by plaintiff in excess of what was reasonable freight, in order to obtain possession of some railroad ties brought by defendant as a carrier from Warwick to Portland in November, 1872. The ties having arrived at Portland, the defendant insisted on payment of $60 per car in gold as freight, claiming that the plaintiff had agreed to pay this sum, which was denied by him as a witness, and he further testified, that no rate was ever fixed upon between them, and that $37 per car was all

that he ever had paid, and all that the company was entitled to.

In the course of the trial the plaintiff was asked what he paid defendant in 1870 freight per car on ties and lumber from Warwick to Portland. This was objected to, but admitted; and as we hold, rightfully, as bearing on what was a reasonable sum for like services in 1872. If there had been no contract between the parties as to the rate to be paid, the defendant was only entitled to demand a reasonable amount therefor. The evidence showed that the defendant declined bringing ties from Warwick to Portland in 1872, though some were brought in 1871–72, for Seaman & Co. at $40 per car.

In order therefore to determine whether $60 was or not reasonable, evidence of what the defendant had charged previously for like services was admissible if confined within proper limits as to time; and we think that two years was not beyond what was a proper subject of inquiry, it appearing that the cost to the road of transportation did not increase during this time, the value of lumber and risk attending its carriage on the road being shown to be greater than that of ties. If the plaintiff was willing to accept as a criterion the charges made by the defendant for transporting a car of lumber, the defendant was not injured thereby.

But another answer to this objection is, that the defendant, in a subsequent stage of the cause, introduced the same evidence, and proved by its own witnesses what it had received per car in 1870 for hauling ties and lumber from Warwick to Portland, thus waiving its objection, if it had been of any validity.

It is further urged that the verdict is not sustained by the evidence. We have examined the testimony and do not find that preponderance against the verdict which would authorize us for this cause to order a new trial. Motion overruled. Judgment on the verdict.