properly denied, for the reason that the complaint did not state that the plaintiff was a stock corporation.

I think the case should have been disposed of upon the merits, and that the judgment should be reversed and a new trial ordered.

MCLENNAN, P. J., concurred.

Judgment affirmed, with costs.

---

JOHN B. FREY, as Permanent Receiver of the ROGERSON FRUIT AND COLD STORAGE COMPANY, Respondent, Appellant, v. NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant, Respondent.

Fourth Department, July 12, 1906.

Carrier — contract to deliver goods at specified time — when no merger of oral contract in bill of lading — common-law liability to transport within reasonable time — measure of damages to perishable goods — notice excused when loss occasioned by falling market.

Where the local superintendent and train dispatcher of a railroad company assure a shipper that certain fruit will be sent through on a fast freight train in time to sail upon a Wednesday steamer, and the dispatcher promises that it shall arrive on Tuesday morning, there is an express contract to deliver at that time; and the carrier is liable for damages caused by a breach thereof.

Such oral contract is not merged in a shipping receipt given by the carrier on which is printed a condition that it shall not be bound to carry the property by any particular train or vessel, or in time for any particular market, when the receipt contains the written words "For export to London, Eng., per SS. St. Louis, sailing 13 Decr.," for where written words in a contract are at variance with printed words the former must prevail.

A railroad company is bound to forward perishable goods immediately to their destination, and where a carrier takes over three days to deliver such goods when the usual time required for shipment on fast freight trains is from twenty-four to twenty-eight hours, it is liable to the shipper for a failure in its common-law duty to transport with due diligence and within a reasonable time.

The measure of damages is the difference between the value of the fruit in New York city at the time and place it ought to have been delivered and its value at the same place at the time of actual delivery, together with the cost of the refrigerating space reserved for its export, with interest. And although the fruit was intended for the London Christmas trade and part of it packed especially for that market, the shipper cannot recover the difference between the value of the fruit if it had been received in New York city in time for shipment and the amount for which it subsequently sold at auction in Liverpool,

to which place the owner shipped it in non-refrigerated space, when it appears that it would have sold in the New York market for a larger sum, for in making such shipment the owner did not use reasonable care to make the damage as small as possible.

Although the shipper failed to comply with a condition on the receipt that notice of loss or damage must be given in writing to the agent at the point of delivery within thirty days of delivery, and has failed to allege a waiver by the carrier of this condition, it is immaterial when the loss arose from a falling market, caused by delay.

CROSS-APPEALS by the plaintiff and the defendant from a judgment of the Supreme Court in favor of the plaintiff for $4,997.93 damages, entered in the office of the clerk of the county of Monroe on the 27th day of March, 1906, upon the report of a referee, the plaintiff appealing because damages were computed upon the value of the goods in New York city instead of upon their value in London, England.

*Elbridge L. Adams,* for the plaintiff.

*Daniel M. Beach,* for the defendant.

Judgment affirmed, without costs to either party, on opinion by BOWMAN, referee.

All concurred.

The following is the opinion of the referee:

BOWMAN, Referee:

This is an action brought by the Rogerson Fruit and Cold Storage Company, and continued by its receiver, against the New York Central and Hudson River Railroad Company for damages through failure on the part of the defendant company to transport four cars of fruit from Rochester to New York in time for the sailing of the steamship *St. Louis,* leaving that port for Liverpool upon Wednesday, the 13th day of December, 1899, and upon which the plaintiff company had engaged cold-storage space in which to ship the fruit to London for the Christmas trade, for which the greater part of it was especially packed, being put in half boxes instead of whole boxes, the latter being the customary method of packing for the American trade.

The plaintiff, in its complaint, asks to recover upon either of two grounds: One, upon an express contract on the part of the railroad company to transport the fruit over its line in time for the sailing of the steamer, and the other upon the defendant's common-law obligation as a common carrier for hire to transport freight delivered to it with reasonable dispatch.

The plaintiff's principal place of business was Le Roy, N. Y. The fruit was packed there and delivered a little after midnight on December 10, 1899, to the Buffalo, Rochester and Pittsburg railway for transportation over its line to the defendant's road at Rochester, N. Y., where it arrived and was delivered to defendant about seven A. M. on December eleventh.  Upon the 8th and 9th of December, 1899, before the fruit left Le Roy, Mr. Upton, one of the directors of the plaintiff company, who had been a shipper over the defendant company's road for many years, had two conversations with Mr. Bradfield, the defendant's general superintendent at Buffalo, with whom he was well acquainted.  He told Mr. Bradfield how important it was to get the fruit through to New York in time to take the Wednesday steamer; that it was intended for the Christmas trade.  Mr. Bradfield said he would do everything in his power to get the fruit through; that he would give directions to have it put on a fast train and send it right straight through, adding, "You need not fret about that; if you get them to Rochester we will get them through."  Bradfield further said that he would instruct his representative, Mr. Drexelius, to see that his instructions were carried out, and in the second conversation referred Upton to Mr. Drexelius, saying that the latter was the train dispatcher and had full charge of all defendant's cars.

Upton, following Bradfield's directions, then had a talk with Drexelius, who was the train dispatcher on defendant's road at Buffalo, in the course of which Drexelius said: "I will instruct the yardmaster at East Rochester that the moment these goods get there to put them in a fast train and send them to New York.   *   *   * You need not fret about it a bit; they will be there in time for the steamer," and in response to a question from Upton about the time when they would get to New York Drexelius replied: "They will be there Tuesday morning."

This evidence, standing wholly uncontradicted, is sufficient to

establish an express contract on the part of the defendant to transport the fruit to New York in time for the sailing of the steamer, and not later than Tuesday morning.

The defendant contends that these conversations were not binding upon the defendant, but were merged in the shipping order and shipping receipt which were subsequently issued by the freight agent of the Buffalo, Rochester and Pittsburg Railroad Company at Le Roy at the time of the departure of the cars from that place, and which, taken together, may be fairly considered to constitute a bill of lading for the fruit, one of the conditions upon the back of the receipt being that no carrier of the goods should be bound to carry the property by any particular train or vessel, or in time for any particular market, or otherwise than with as reasonable dispatch as its general business would permit.

It would seem to be sufficient answer to this to say that the shipping receipt contains upon its face in writing the words, " For export to London, Eng., per SS. St. Louis sailing 13 Decr." It is true that these words were at variance with the printed conditions upon the back of the shipping receipt, but in such cases the rule seems to be well settled that the written words must prevail. (*Babcock* v. *L. S. & M. S. R. Co.,* 49 N. Y. 491 ; *Miller* v. *Hannibal & St. Joseph R. R. Co.,* 24 Hun, 607.)

It may also be said that they do not in express terms require defendant to carry goods in time for the sailing of the steamer, but it seems clear that the defendant's agreement as made out from all the shipping documents and the oral negotiations not inconsistent therewith, was to carry the goods to New York city and alongside the steamship *St. Louis* in time for her sailing on Wednesday, December thirteenth.

But assuming that there was no express contract between the parties requiring the defendant to transport the fruit within any given time, the defendant was liable, under its common-law obligation as a carrier, which required it not only to transport the goods to their destination, but to deliver or offer to deliver them to the consignee within a reasonable time. (*Sherman* v. *Hudson River R. R. Co.,* 64 N. Y. 254.)

When the fruit arrived at Rochester, it was received by the defendant's employees, who said that they had been on the lookout

for it and had had especial instructions in regard to it, and in pursuance of such instructions the four cars were attached to a through fast freight train running on schedule time over the defendant's road, which left Rochester about one o'clock in the afternoon of December tenth, bound for New York. The usual and ordinary time of this train, which was known as the " Meat Train," between Rochester and New York, was about eleven hours, and the ordinary and usual time required by defendant's through fast freight trains from Rochester to New York was from twenty-four to twenty-eight hours. The cars were billed through to the freight terminus of defendant's road at Sixtieth street in the city of New York, but for some cause, which does not appear, they did not go to the city of New York, but arrived at Weehawken, the terminus of the West Shore branch of defendant's road, on the opposite side of the river from New York, about two-fifty P. M. on December thirteenth and after the steamer *St. Louis* had sailed.

It further appeared that the defendant did not deliver, or offer to deliver, the fruit to plaintiff's consignee, until some time upon the 14th day of December, 1899.

It may fairly be concluded then that the cars, if they had been carried over the defendant's road in the ordinary and usual way, would have arrived in New York city sometime between one and five o'clock in the afternoon of December twelfth, and if they had not in some way been detached from the meat train, they would have arrived much sooner. The goods were perishable, and in such case a railroad corporation, on receiving them for transportation, is bound to forward them immediately to their destination. (*Tierney v. N. Y. C. & H. R. R. R. Co.*, 76 N. Y. 305.)

It follows, therefore, that the defendant road failed to transport the fruit between the points named with due diligence and within a reasonable time, and is liable to plaintiff for the consequent breach of its common-law obligation.

The defendant, however, seeks to relieve itself under either phase of the case, on the ground that the conditions printed upon the back of the shipping receipt expressly exempt it from any liability unless notice of loss or damage is given to the carrier in writing to the agent at the point of delivery promptly after the arrival of the property, and if delayed for more than thirty days after the delivery of

the property and after due time for the delivery thereof, the carrier shall not be liable in any event.

No notice required by the conditions upon the back of the receipt was ever given defendant, but the plaintiff contended that defendant had waived the benefits of this provision. But as there was no allegation of waiver in the complaint, the case comes squarely within the rule as laid down in *Glazer* v. *Home Ins. Co.* (48 Misc. Rep. 515), which requires that the plaintiff, if he desires to plead a waiver by defendant of any condition with which he has not complied, must allege the condition claimed to have been waived and the facts constituting such waiver. Moreover, if a waiver had been alleged, none was proved, for mere delay, silence or negotiations looking to a settlement cannot constitute a waiver. (*Glazer* v. *Home Ins. Co.*, *supra ; Pope Mfg. Co.* v. *Rubber Goods Mfg. Co.*, 110 App. Div. 341.)

Conceding, however, that there was no waiver by defendant, nevertheless defendant's contention as to the necessity for notice of loss or damage would seem to be completely disposed of by the reasoning in an almost parallel case recently decided, where the court holds that the clause referred to has no application to loss or injury to the shipper from a falling market caused by delay. (*Johnson* v. *Missouri, Kansas & Texas R. Co.*, 107 App. Div. 375.)

The only remaining question is as to the measure of damages. The defendant claimed that its liability was measured by the difference between the value of the fruit in New York city, if it had been received there in time for the sailing of the steamer, and its value at the same place when it was actually received and after the steamer had sailed. The plaintiff contends that it is entitled to recover the difference between the value of the fruit in New York, if it had been received there in time for the sailing of the steamer, and the amount actually received for it in Liverpool less freight and expenses.

The defendant did not contract to carry the fruit to London, the point of ultimate destination, but to New York only. The measure of damages in this State in such a case, both on principle and upon the authorities, is the difference in the value of the goods at the time and place they ought to have been delivered and the time of their actual delivery.

The rule, in the language just given, is clearly set forth in *Sherman* v. *Hudson River R. R. Co.* (64 N. Y. 254), following the earlier cases of *Marshall* v. *N. Y. C. R. R. Co.* (45 Barb. 508; affd., 48 N. Y. 660), and *Gregory* v. *McDowell* (8 Wend. 435), and is found in substance in all the cases in this State cited in behalf either of the plaintiff or defendant. In the *Johnson* case, referred to above, which is closely analogous to the case at bar, the goods were shipped over the defendant railroad from points in Texas, consigned to Liverpool by the way of Boston, and the court held that the obligation of the defendant railroad company terminated upon the delivery of the property to the steamship company at the port of Boston, that port being the point at which the defendant's contract of carriage terminated, and the court allowed damages at Boston and not at Liverpool.

In one or two of the cases cited evidence of damage at the ultimate point was received, but only to aid in fixing damages at the point where the defendant's contractual obligation terminated, and for want of better evidence of the value at that point. (*Marshall* v. *N. Y. C. R. R. Co.*, 45 Barb. 506; *Holden* v. *N. Y. C. R. R. Co.*, 54 N. Y. 662.)

The case at bar seems stronger than any of those cited. The defendant transported the fruit to New York, where it was delivered to and received by Mr. Rogerson, the plaintiff's president, and Mr. Zucca, the consignee at London. Upon such delivery and acceptance the defendant's liability was then fixed and could not afterwards be enlarged by any act of the plaintiff. On the contrary, it was the plaintiff's active duty to use all ordinary care and make all reasonable exertion to render the loss as light as possible. (*Hamilton* v. *McPherson*, 28 N. Y. 72.)

Rogerson and Zucca, after some examination of the fruit to ascertain its condition, and after consultation with other fruit men in New York city, shipped the fruit to Liverpool upon the steamship *Lucania*, sailing from New York to that port on the sixteenth day of December, where she arrived late at night on December twenty-fourth. Rogerson and Zucca were unable to obtain refrigerated space on the *Lucania*, which was the first steamer sailing for an English port after the sailing of the *St. Louis* on the thirteenth of

December. The fruit arrived in Liverpool in badly damaged condition, and was sold at public auction shortly after its arrival for $1,185.60. A small portion of the fruit was packed in barrels, a form of package as well adapted for the New York as the London market. The evidence of Mr. Zucca, which must be taken as not unfavorable to the plaintiff, shows that the market value of the entire shipment in New York, after the *St. Louis* had sailed, was about $3,500, and it further appeared that half boxes of fruit were sometimes sold in the New York market.

Under these circumstances it cannot be said that the plaintiff, by shipping the fruit in non-refrigerated space to Liverpool, which was not the market for which the fruit was packed or was first intended, by steamer sailing on December sixteenth, which did not and could not reach Liverpool or London in time for the Christmas trade, used such reasonable care and diligence as was demanded of it to render the defendant's liability as small as possible.

It follows that the plaintiff should recover the difference between the value of the fruit in New York city at the time and place it ought to have been delivered on December 12, 1899, and its value at the same place at the time of its actual delivery, with interest. from December 13, 1899, together with the amount paid by plaintiff for refrigerated space upon the steamship *St. Louis*, with interest from the time of payment.