GRAND et al. v. LIVINGSTON.

(Supreme Court, Appellate Division, Fourth Department. April, 1896.)

CARRIERS—EXEMPTION FROM LIABILITY—CONTRACT—BY LAWS OF WHAT STATE GOVERNED.

> The presumption that a contract for shipment, made with plaintiff by defendant carrier in Massachusetts, was intended to be governed by its laws, by which the clause exempting the carrier from liability is void, is not overcome by the fact that defendant was a New York corporation, and plaintiffs residents of New York, and that the stock shipped was to be delivered in New York, especially where, indorsed on the contract, there was a provision, exempting the carrier from liability for injury to the persons accompanying the stock, which expressly provided that any question arising thereunder should be determined by the laws of New York.

Appeal from circuit court, Erie county.

Action by Douglass H. Grand and others against Johnston Livingston, as president of the National Express Company. From a judgment for plaintiffs and from an order denying a motion for a new trial on the minutes, defendant appeals. Affirmed.

The plaintiffs herein are co-partners in the business of purchasing and selling horses at East Buffalo, in this state, and they are all residents of the state. The National Express Company, a joint-stock association, is a common carrier of goods, chattels, merchandise, and live stock, for hire, and has offices in various towns and cities of the different states, and, among others, one in the city of Buffalo, in the state of New York, and one in the city of Boston, in the state of Massachusetts. The defendant is the president of such association, and a resident of the city of New York, at which place is located the principal office of the company. Upon the 4th day of November, 1894, the plaintiff Douglass H. Grand delivered to the defendant, at the city of Boston, a quantity of horses, to be by it transported and delivered to his firm in the city of Buffalo, in consideration of the sum of $125 to be paid therefor. The horses were carried to Buffalo, two representatives of the plaintiffs accompanying them upon the cars, and were there delivered to the consignees. But it is claimed that, in consequence of the negligence of the defendant, they were seriously injured while in transit, to the great loss and damage of the plaintiffs.

At the time of delivering the horses to the defendant for shipment, the shipper was required to sign a contract or release, which reads as follows:

---

[1] For dissenting opinion, see 38 N. Y. Supp. 1014.

"Live Stock Taken Only at Owner's Risk.

"National Express Company.

"Live Stock Contract.

"Agreement, made at Boston, Mass., on the 4th day of November, 1894, between the National Express Company and D. H. Grand, of Buffalo, N. Y.:

"Whereas, said D. H. Grand has this day delivered to said company at Boston, Mass., the following animals, value agreed at $75.00 per head, 22 horses, of which he declares himself to be the owner, consigned to D. H. Grand & Co., at Buffalo, N. Y.: Now, it is agreed that said company undertakes, as forwarders only, to forward said property to the nearest point of destination reached by said company. It being understood that said company relies upon the various railroad and steamboat lines of the country for its means of forwarding property delivered to it to be forwarded, it is agreed that it shall not be liable for any damage to said property caused by. the detention of any train of cars, or of any steamboat upon which said property shall be placed for transportation, nor by the neglect or refusal of any railroad company or steamboat to receive and forward the same. * * * In consideration of the undertaking of said company to forward said property as above mentioned, and of the reduced rate of compensation at which said property is to be so forwarded, said shipper agrees that said company, its agents, or any railroad or transportation company or carrier over whose lines the said property may pass, shall not, under any circumstances nor for any cause, be liable for any injury or damage to or loss of said property, whether or not the said injury, damage, or loss happen or arise from any fault,-negligence, or carelessness, gross or otherwise, on the part of said company, its agents, or servants; it being the intent of this contract that said property shall be forwarded entirely at the owner's risk.

"For National Express Co.,

"W. G. Hamlin, Agent.

"[Shipper will sign here.]

"D. H. Grand, Shipper."

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and GREEN, JJ.

John G. Milburn, for appellant.

I. W. Cole, for respondents.

ADAMS, J.   The question of the defendant's negligence, as well as that of the contributory negligence of the plaintiffs' representatives, was submitted to the jury upon evidence which was somewhat conflicting in its character, but which, it is conceded, was ample to support the verdict; and the only question presented by the record which appears to require serious examination is that which arises upon the construction given by the trial court to the release which is embodied in the shipping contract entered into cotemporaneously with the delivery of the horses to the defendant.   This instrument is as broad and comprehensive in its terms as language can possibly make it, and, if valid, amounts to an absolute release of the defendant from all liability for duty omitted, as well as for affirmative acts of negligence, however gross may be their character.   Such a contract has never been recognized as possessing any validity in the state of Massachusetts (School Dist. in Meadfield v. Boston, H. & E. R. Co., 102 Mass. 552; Pemberton Co. v. New York Cent. R. Co., 104 Mass. 144; Walsh v. Railroad Co., 160 Mass. 571, 36 N. E. 584); while, upon the other hand, the courts of this state have held, and it is now the accepted law of the state, that carriers may, by express stipulation, limit their common-law liability to the extent of reliev-

ing themselves from the consequences of their negligent acts. Mynard v. Railroad Co., 71 N. Y. 180; Nicholas v. Railroad Co., 89 N. Y. 370; Kenney v. Railroad Co., 125 N. Y. 422, 26 N. E. 626. It is to be noted, however, that this rule is applicable to cases only in which the language of the contract is plain and unequivocal, and that there is an apparent tendency in the later decisions to restrict its operation to the very narrowest possible compass. Our attention has not been directed to any case which sanctions so thorough and radical a divesting of all liability as is sought to be accomplished by the release in question, nor do we believe that the rule ought to be extended so as to exempt the carrier from the consequences of gross negligence, although it is, perhaps, unnecessary to express any opinion upon that subject, inasmuch as we are disposed to consider the case from another and somewhat different standpoint.

The value which attaches to the exemption clause of this contract depends, necessarily and in any event, upon whether it is to be governed by the law of Massachusetts, or by the law of this state; and the determination of this question involves not only a careful examination of the instrument itself, but likewise of all the circumstances attending its execution. First in importance, therefore, is the fact that the contract was executed in the former state, and this of itself furnishes sufficient reason for concluding that the law of that state is controlling, unless it is made to appear that it was the intention of the parties, when entering into the contract, to be bound by the law of some other state. This statement of the law of the place is one which might, perhaps, be safely permitted to rest upon principle; but it is supported by abundant authority.

In the case of Lloyd v. Guibert, 6 Best & S. 100, it was said, by Mr. Justice Willes, in delivering the judgment, that:

"It is generally agreed that the law of the place where the contract is made is, prima facie, that which the parties intended, or ought to be presumed to have adopted, as the footing upon which they dealt, and that such law, therefore, to prevail, in the absence of circumstances indicating a different intention, as, for instance, that the contract is to be entirely performed elsewhere, or that the subject-matter is immovable property situated in another country."

In another English case the same doctrine was enunciated by Denman, J., in the following language, which was subsequently approved by the court of appeal:

"The general rule is that, where a contract is made in England, between merchants carrying on business here, as this is, but to be performed elsewhere, the construction of the contract and all its incidents are to be governed by the law of the country where the contract is made, unless there is something to show that the intention of the parties was that the law of the country where the contract is to be performed should prevail." 12 Q. B. Div. 589, 596, 600.

And this general rule has been recognized and adopted in this country by an almost unbroken line of decisions of both the state and federal courts, to some of which it may be desirable to advert briefly.

In the case of McDaniel v. Railway Co., 24 Iowa, 412, which was quite similar in its main features to the one at bar, and in which it appears that the cattle transported by a railroad company from a

place in Iowa to a place in Illinois, under a special contract made in the former state, containing a stipulation that the company should be exempt from liability for any damage, unless resulting from collision or derailing of trains, were injured in Illinois by the negligence of the company's servants, it was held that the case was to be governed by the law of Iowa, which permitted no common carrier to exempt himself from the liability which would exist in the absence of the contract. The court, Chief Justice Dillon presiding, said:

"The contract being entire and indivisible, made in Iowa, and to be partly performed here, it must, as to its validity, nature, obligation, and interpretation, be governed by our law."

So, too, in Pennsylvania Co. v. Fairchild, 69 Ill. 260, where a railroad company received, in Indiana, goods consigned to a party in Leavenworth, Kan., and which were destroyed by fire while in transit, the court held that the case must be governed by the law of Indiana, by which one of the carriers was not liable for the loss of goods after they passed into the custody of a connecting line; while, as early as 1832, Mr. Justice Thompson, of the United States supreme court, in Cox v. U. S., 6 Pet. 172, applied the same rule, which has been frequently reiterated by that court down to the present time. Liverpool & G. W. Steam Co. v. Phenix Ins. Co., 129 U. S. 397, 9 Sup. Ct. 469.

The cases in our own state which contain express recognition of this rule are very numerous, and it can hardly be necessary or profitable to cite more than one or two of them.

In Dyke v. Railway Co., 45 N. Y. 113, 116, it was said, by Allen, J.:

"The lex loci contractus determines the nature, validity, obligation, and legal effect of a contract, and gives the rule of construction and interpretation, unless it appears to have been made with reference to the laws and usages of some other state or government, as when it is to be performed in another place; and then, in conformity to the presumed intention of the parties, the law of the place of performance furnishes the rule of interpretation."

And in Insurance Co. v. Force, 142 N. Y. 90–100, 36 N. E. 874, it is said that:

"The obligation of the shippers of the cargo is to be determined by the law of the place where the affreightment was made."

If, then, the rule which has been thus far considered is applied to this case, it follows that the release under which the defendant seeks to escape liability must be given effect and construction under the law which obtains in Massachusetts, unless it can be fairly said that the parties thereto, at the time of executing the same, clearly manifested an intention that it should be governed by the law of this state, which intention, it may be added, must have been entertained by both of them. And, as we have seen that the law where it was executed affords prima facie evidence of the intent of the parties, the burden would seem to rest upon the defendant of overcoming the presumption thus created, by satisfactory proof.

It was said by Andrews, Chief Judge, in the Nicholas Case, supra, that:

"The circumstances under which contracts of this kind are usually made preclude a careful consideration, by the shipper, of their language and effect."

And for this reason, as was suggested upon the argument, the question of intent can hardly be said to involve the actual mental operations of the parties. For, as a matter of fact, they probably did not stop to consider what was the legal effect of their agreement, or whether there was any diversity in the law of the two states; and, therefore, when we speak of the "question of intent," we are making use of what may perhaps be termed a "legal fiction"; but, nevertheless, the law does look at the acts of the parties, and the circumstances surrounding them, which may possibly have exerted some influence upon their actions, and then assumes that their intention is in harmony with such acts and circumstances.

The facts relied upon by the defendant as indicating an intention to bring the contract within the operation of the law of this state are: (1) That this state is the legal residence of the defendant, and the actual residence of the plaintiffs; (2) that the contract, so far as delivery is concerned, was to be performed in this state; and (3) that no effect could be given to the provisions of the contract, if the same is to be interpreted by the law which obtains in the state where it was executed. It is undoubtedly a well-settled rule of construction that meaning and effect shall be given to all of the language employed in a contract, provided it can be done without violence to the plain object and intent of the parties thereto. Buffalo E. S. R. Co. v. Buffalo St. R. Co., 111 N. Y. 132, 19 N. E. 63. And if this contract was one which had been drawn up at the time of its execution, to express the intention of the parties in this particular transaction, it might be urged, with considerable force, that the law of this state should be invoked, in order that effect might be given to all its provisions; but it appears that the agreement was completed by filling up a blank form with such words as were necessary to fit the occasion, and, presumably, just such a form as was used by the company in its business throughout the entire country, or wherever it had an office. And this circumstance must be regarded as lessening somewhat the force which might otherwise attach to the defendant's contention in this regard. The residence of the parties, and the fact that the contract, by its terms, was to be partly performed within this state, are certainly circumstances which might very properly be considered in determining the question of intent, and which might, perhaps, prove efficient aids to the court in its effort to reach a correct solution thereof, were there nothing in the case to counterbalance them; but, in considering this question, two distinct facts or circumstances are made prominent, either one of which, we think, is sufficient to overcome any inference which may be properly drawn from those relied upon by the defendant, and which have just been adverted to.

It has already been stated that, when these horses were shipped, it was arranged that two representatives of the plaintiffs should accompany them upon their trip to Buffalo. This, it seems, was required, as one of the conditions of transporting the horses, and no additional fare was charged for these men; but they, too, were obliged to enter into a contract with the express company absolving it

from all liability for injury to their persons or property. This supplemental release was indorsed upon the back of the original contract, and in that the defendant was careful to insert a clause expressly providing that any question arising thereunder should "be determined by the law of the state of New York." This certainly furnishes sufficient evidence to justify the conclusion that, when the defendant desired to bring any contract within the operation of the law of a particular state, it was aware of the importance and necessity of expressing such design in language which was incapable of misconstruction; and therefore its omission to insert a similar provision in its original contract possesses a significance which cannot be disregarded in the effort to ascertain the intent of at least one of the parties thereto.

The other circumstance, to which allusion has been made, arises out of the fact that to give to this contract the construction contended for by the defendant would make a contract for the plaintiffs which, to say the least, is a very unreasonable one, and which would place them entirely at the mercy of the defendant. And this, in the absence of any other circumstance, would, in our opinion, afford sufficient reason for refusing such a construction. Russell v. Allerton, 108 N. Y. 288, 15 N. E. 391.

We think that the case was properly disposed of at the circuit, and that no sufficient ground is presented for interfering with the result reached, and that the judgment and order appealed from should therefore be affirmed, with costs.

Judgment and order affirmed, with costs. All concur.