is not entitled to recover therefor upon the evidence. McDonald v. Metropolitan Street R. Co., 167 N. Y. 66, 70, 60 N. E. 282.

The judgment and order should be reversed, and a new trial be granted, costs to abide the event. All concur, except HIRSCH-BERG, P. J., and HOOKER, J., who dissent.

(93 App. Div. 582.)

WILLIAMS v. CENTRAL R. CO. OF NEW JERSEY.

(Supreme Court, Appellate Division, Second Department. April 29, 1904.)

1. CARRIERS—PASSENGERS—BAGGAGE—LOSS BEFORE FORWARDING—CARRIER AS WAREHOUSEMAN.

A railroad company received a passenger's trunk from an expressman, but, when the passenger subsequently went to the station to check the trunk, it could not be found. The passenger accepted a check from the baggage master on his promise that he would send the trunk on. She presented the check at her destination, but failed to get the trunk; it appearing that it had been stolen from the company. *Held*, that the company's relation to the trunk was that of common carrier, and not of ware-houseman.

2. SAME—WHAT LAW GOVERNS.

Where a passenger going from New York to her destination in New Jersey failed to find her trunk at the station of departure so she could check it, but accepted a check therefor from the baggage master on his promise to forward the trunk, and presented the check at her destination, but failed to receive the trunk, the contract for the transportation of the baggage was governed by the New Jersey law.

3. SAME—LIMITATION OF LIABILITY—APPLICABILITY OF STATUTE.

A statute permitting a common carrier to limit its liability for loss of a passenger's baggage to a certain amount per 100 pounds by posting a general notice, unless the passenger shall pay money to the company "by way of insurance" for the assumption of additional responsibility, does not apply to the loss of a passenger's trunk by theft from the company at the station of departure before the passenger has had an opportunity to check it; the gist of the passenger's action being negligence.

4. SAME—SUFFICIENCY OF NOTICE—JURY QUESTION.

The question of the sufficiency of a notice posted by a railroad company in its baggage room in order to limit its liability for the loss of baggage, pursuant to a statute permitting it to do so by placing a notice in a "con-spicuous place," *held* properly submitted to the jury under the evidence.

Appeal from Special Term, Kings County.

Action by Oliver Williams against the Central Railroad Company of New Jersey. From a judgment for plaintiff, and from an order denying defendant's motion for a new trial, it appeals. Affirmed.

The statute referred to in the opinion (2 Gen. St. N. J. p. 2672, § 138) reads as follows: "Any railroad company of this state may, by giving notice to any person or persons offering goods, merchandise, or baggage for transportation on the railroad, or in the boats or vessels of such company, limit their responsibilities as carriers thereof, to one hundred dollars for every one hundred pounds weight of such goods, merchandise, or baggage, and at that rate for a greater or less quantity, unless such person or persons so offering such goods, merchandise, or baggage for transportation, shall pay to said company, by way of insurance, for any additional amount of responsibility to be assumed, such rate or rates as may be charged by said company thereof, not to exceed the legal rates for transporting one hundred pounds of goods or merchandise on such

¶ 2. See Carriers, vol. 9, Cent. Dig. § 1538.

railroad, or in such boats or vessels, for every two hundred dollars of additional responsibility assumed on each one hundred pounds of such goods, merchandise or baggage, and at that rate for a greater or less quantity; and a general notice of the limitation of such company's responsibility, placed in a conspicuous place, at or in the receiving office of such company, where goods, merchandise, or baggage, are usually received by them for transportation, and inserted in the bills of lading or receipts given for such goods or merchandise, and in the tickets delivered to passengers, shall be deemed sufficient notice under this section."

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

Robert Thorne, for appellant.
Robert L. Luce, for respondent.

JENKS, J.  The action is by the assignee of a passenger against a railroad company for the negligent loss of a trunk.  The defendant conceded that it received the trunk at its station in New York City from an expressman.  The assignor of the plaintiff subsequently went to the station, bought a ticket on the defendant's railway for her carriage to Roselle, N. J., then went to the baggage room, showed her ticket with the express check to the baggage master, and asked that her trunk be checked to her journey's end.  Neither the baggage master nor the passenger could find the trunk.  The passenger, desiring to take a certain train, accepted a check for her trunk on the promise of the baggage master that he would send the trunk on to Roselle.  She presented the check at Roselle, but the trunk was not delivered to her.  It subsequently appeared that it was taken from the possession of the defendant by theft.  Despite the plaintiff's contention that the defendant, under the circumstances, was a warehouseman, the case was tried on the theory that its relation to the passenger was that of a common carrier.  I think that the court did not err.  The passenger did not intrust the trunk to the defendant to keep on storage, nor did the defendant receive it for that purpose.  She contemplated a carriage of the trunk in the train whereon she proposed to travel, but, with the alternative of her detention, she consented that the trunk, which presumably at that moment could not be found, although the supposed explanation for its absence was then made to her, should be forwarded by a later train.  This is entirely opposed to the idea of keep or storage.  I think, therefore, that the defendant must be regarded as a common carrier. Shaw v. Northern Pacific Railroad Company, 40 Minn. 144, 41 N. W. 548.

The law of New Jersey is applicable.  Curtis v. Del., Lack. & Western R. R. Co., 74 N. Y. 116, 30 Am. Rep. 271; Brown v. Camden & Atlantic Railroad Co., 83 Pa. St. 316.  But I think that the statute raised by the defendant does not apply.  The defendant was a common carrier, and, as such, was an insurer, save against an act of God or of the public enemy.  Pennsylvania R. R. Co. v. Knight, 58 N. J. Law, 287, 33 Atl. 845.  The action is for negligence, and the plaintiff's assignor made out a prima facie case when he showed a demand for the trunk, accompanied by a presentation of the check at the place where the defendant undertook to deliver the

trunk, and the failure of the defendant to deliver it. Burnell v. New York Central R. R. Co., 45 N. Y. 184, 6 Am. Rep. 61. The bare proof that the trunk was stolen while in the possession of the defendant did not acquit the defendant of negligence. In Burnell v. New York Central R. R. Co., supra, it is said, "If it [the trunk] had been burned or stolen without fault on their part, the defendant would not have been liable." I think that the statute must be construed as a limitation upon the defendant's liability as an insurer. This view is strengthened by the provision thereof which reads "unless such person or persons so offering such goods, merchandise, or baggage for transportation, shall pay to said company, by way of insurance, for any additional amount of responsibility to be assumed," etc. The Supreme Court of New Jersey has held that while a carrier may contract, not contrary to public policy, so that his liability may be regulated, lessened, or limited, yet he cannot contract against "his own clear, positive wrong, default, or misconduct, whether it arise from his own willfulness, recklessness, incapacity, want of skill, or the failure to exercise it." Ashmore v. Pennsylvania Steam Towing Transportation Co., 28 N. J. Law, 180.

But assuming that the statute did apply, I think that the judgment may be sustained. It is settled in this state that the provision for general notice is insufficient. Thompson on Carr. 526, 528; Hollister v. Nowlen, 19 Wend. 234, 32 Am. Dec. 455; Cole v. Goodwin, 19 Wend. 251, 32 Am. Dec. 470; Rawson v. Pennsylvania Railroad Co., 48 N. Y. 212, 8 Am. Rep. 543. And the latter case also applies to such notice as was printed on the railroad tickets. The rule seems to be contrary in Pennsylvania. Thompson on Carr. 526; Whitesell v. Crane, 8 Watts & S. 369; Bingham v. Rogers, 6 Watts & S. 495, 40 Am. Dec. 581; Laing v. Colder, 8 Pa. 479, 49 Am. Dec. 533. We are not cited to any decision in New Jersey, and I have not been able to find any authority in that state. Kinny v. Central Railroad Company, 32 N. J. Law, 407, 90 Am. Dec. 675, is not wholly satisfactory, for the reason that the attention of the acceptor of the pass was specifically called to the contract, in addition to the printing on the pass. There is no proof in this case that the plaintiff's assignor ever saw the notice in the room or on the ticket, or that she had her attention called to either of them. But assuming that the statute is valid as to its provision for notice, the question still remained whether the defendant had complied with it.

As the notice to be posted is general, it is but just to regard the requirement that the place of posting shall be conspicuous, as an essential part thereof. "Conspicuous" means "open to the view; catching the eye; easy to be seen; manifest." Cent. Dict. "Obvious to the sight; seen at a distance." Wor. Dict. "Exposed to the view; clearly visible; prominent and distinct." For example, a post box is held to be a conspicuous place for the deposit of a notice (January v. Superior Court, 73 Cal. 537, 15 Pac. 108), and the door of a residence for the affixing of a notice (Ramsey v. Barbaro, 12 Smedes & M. 293).

The question was whether there was a notice at this time in the baggage room, and, if so, whether it was posted in a conspicuous

place.  The word "conspicuous" required the defendant to post the notice in the baggage room, so that naturally, under the general surrounding circumstances, it would be open to the view, obvious to the sight, and catch the eye of the passenger of ordinary care and observation, and be seen by him in the course of checking his luggage. Greenawalt, the baggage master, and Hay, the foreman of the baggage checkers, testify that at the time in question notices were posted in the baggage room.  They describe with particularity the dimensions of the room, the construction and arrangement thereof, and the relative situation of the notice to the checking counter and the entrances to the room.  Hay further testifies:

"Different persons attend to posting up these notices—the baggage master in charge of the room.  Mr. Greenawalt is the general baggage agent.  He is above that.  The baggage agent in charge of the room does that.  His name is Mr. Purick."

Greenawalt also testifies that in October, 1900, there was a notice to the left of the counter.  "We put up a new one whenever it would become defaced or anything of the sort.  We would keep one up all the time.  *  *  *  If they get dirty, we take them down and put a new one up."  In any event, Greenawalt, the general baggage agent, is testifying to the posting of the notice in October, 1900, and what "we," i. e., he and others, even if subordinates, did in the posting thereof.  There was no other testimony on this subject.

It is contended that the learned court erred in submitting the question of compliance with the statute to the jury.  This depends upon whether these witnesses must be regarded as interested, in the sense of bias, so as to make such submission proper in order that, maugre noncontradiction, the jury might pass upon their credibility.  The jury were certainly free to infer from the testimony that Greenawalt, the general baggage agent, and those under him—"different persons"—attended to the duty of posting the notices, and hence, if this had not been done, it was the fault or dereliction of Greenawalt and his subordinates.  Both Greenawalt and his subordinate Hay "had or might have had a motive for shielding" Greenawalt and those under him "from blame," and consequently their credibility was for the jury.  O'Flaherty v. Nassau Electric R. R. Co., 34 App. Div. 74, 54 N. Y. Supp. 96, affirmed 165 N. Y. 624, 59 N. E. 1128; Volkmar v. M. R. Co., 134 N. Y. 418, 31 N. E. 870, 30 Am. St. Rep. 678; Elwood v. Western Union Telegraph Co., 45 N. Y. 549, 6 Am. Rep. 140.  Barker, J., in Michigan Carbon Works v. Schad, 38 Hun, 71, after a learned discussion, says:

"It is also competent to prove the social and business relations existing between the witness and the party calling him to the stand, and, if it is established that they are such as usually and ordinarily produce an interest in the mind of the witness in favor of the party calling him on the question in dispute, then it is for the jury to say to what extent, if any, the relationship impairs or destroys the credibility of the witness."

In Pratt v. Ano, 7 App. Div. 494, 40 N. Y. Supp. 229, the court, per Ward, J., say:

"This evidence was given by the plaintiff's foreman, whose business it was to look after this timber and protect it from injury, and who, having failed

to do so, was, in a sense, interested in giving a good reason why he had not done so."

I think that, even if the court erred in its charge, which I am not entirely prepared to say, the errors were sufficiently corrected by the subsequent qualifications and charges delivered at the request of the defendant.

The judgment and order should be affirmed, with costs. All concur.