in the matter. Otherwise great injustice might be done to a perfectly innocent person. The present case affords a striking instance. The defendant and the co-respondent, one a hard-working woman and a mother, and the other a clergyman, have been found by the referee to have been guilty of adultery 13 years ago, and upon palpably insufficient and unconvincing evidence. The court below rightly refused to place the sanction of the court upon the referee's report by directing a judgment to be entered upon it. If the court at Special Term had been bound to enter a decree in accordance with the findings of the referee, while the judgment would undoubtedly have been reversed upon appeal, the apparently innocent defendant and co-respondent would have been obliged, pending the hearing of the appeal, to have borne the stigma of a solemn judgment of the Supreme Court conclusively establishing their guilt. It was doubtless just such a result as this, as well as to protect the public interest, that the Legislature forbade the entry of a decree as a matter of course upon a referee's report in an action for divorce, and provided that the court, as well as the referee, must be satisfied that the judgment warranted a decree before one could be entered. The court cannot enter a judgment contrary to that advised by the referee, for such a judgment would be without findings or decisions to support it. The only practicable course, therefore, is that advised by Mr. Justice INGRAHAM to order a new trial before another referee. This was the practice in the court of chancery when the court was dissatisfied with the verdict of a jury and refused to enter judgment therein. Ferguson v. Ferguson, supra.

CLARKE, J., concurs.

---

### VALK et al. v. ERIE R. CO.

(Supreme Court, Appellate Division, First Department. February 5, 1909.)

CARRIERS (§ 148*)—CONTRACT OF SHIPMENT—LIMITATION OF LIABILITY—LAWS GOVERNING.

Whether the provision in the bill of lading, releasing the carrier from liability for loss of the goods through fire not caused by its negligence, was part of the contract of shipment, such a provision, under the statutes of Illinois, forming no part of the contract unless accepted in writing or expressly assented to by the shipper, is to be determined by such laws, though the goods were burned while in transit in New York; the goods being at the time of the contract in Illinois, the shipment taking place there, all negotiations for the contract being there had, the contract being there made and delivered, the shippers having resided there, the action for the loss being brought in their right by plaintiffs as assignees of the bill of lading, and the carrier, which was doing business there, being, for the purpose of the contract, deemed a resident thereof.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 650, 686; Dec. Dig. § 148.*]

Appeal from Trial Term, New York County.

Action by Edward Valk and others against the Erie Railroad Company. From a judgment on a verdict for defendant, and from an or-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

der denying a motion for new trial, plaintiffs appeal. Reversed, and new trial granted.

Argued before PATTERSON, P. J., and McLAUGHLIN, LAUGHLIN, HOUGHTON, and SCOTT, JJ.

Grant C. Fox (Stanley H. Molleson, on the brief), for appellants.

Ogden L. Mills (Frederic B. Jennings and William C. Cannon, on the brief), for respondent.

LAUGHLIN, J. This is an action by the consignees of goods against a common carrier for the destruction of the goods by fire while in transit. The property in question consisted of 100 tierces of grease. It was consumed by fire during the night of the 8th of December, 1905, while in the warehouse of the defendant on the dock at Buffalo where it had been unloaded 10 days before from the defendant's steamer Rochester, by which it had been transported from Chicago to Buffalo under a through bill of lading for New York. The defendant owns and operates a railroad from the city of Buffalo to the city of New York and a line of steamboats known as the Union Steamboat Line for the transportation of freight on the Great Lakes. The property was delivered by Adler & Oberndorf in their stockyards in the city of Chicago to the Chicago, Rock Island & Pacific Railway Company on the 6th day of November, 1905, to be delivered to the Union Steamboat Company at the Sixteenth street dock of the Rock Island Railway Company in said city. Adler & Oberndorf on the same day delivered the receipt which they had received from the Chicago, Rock Island & Pacific Railway Company to the Northrop Commission Company, an Illinois corporation, whose place of business was in the city of Chicago, and the latter company, by the usual indorsement on the receipt, directed the shipment of the goods to the city of New York, and delivered the receipt to the defendant in the city of Chicago for that purpose. On the same day the defendant issued a bill of lading for the shipment of the goods from Chicago to New York, consigned to the order of the Northrop Commission Company at New York, with the notation on the bill of lading to notify the plaintiffs. Evidence was introduced in behalf of the defendant tending to show that although the bill of lading was issued to the Northrop Commission Company on the 6th day of November, 1905, the goods were not actually received from the Rock Island Railway Company until the 10th of the same month. The goods were then loaded on the steamer Rochester, which sailed on the 12th day of November, but, owing to rough, stormy weather, was delayed in her passage, and did not arrive in Buffalo until the 26th of November. The goods were unloaded into the defendant's warehouse two days later. Evidence was given on the part of the defendant tending to show that it became necessary to store the goods in the warehouse until the time of the fire, owing to a congestion of freight which was so great that the defendant's supply of cars, which was adequate in ordinary times, was wholly inadequate for the emergency.

The bill of lading contains conditions releasing the carrier from liability for damage to the property caused by fire. The court ruled upon

the trial that these provisions formed a part of the contract of shipment and became binding upon the shippers by the mere delivery to them of the bill of lading, and instructed the jury, in effect, that the common-law liability of the defendant as a carrier was limited by these provisions to loss by fire caused by its own negligence. The plaintiffs insisted that these provisions of the bill of lading formed no part of the contract of shipment, and were not binding upon them, because they were never duly accepted by them or by their authorized agents in the manner and form required by the laws of the state of Illinois to make them a binding part of the contract. The undisputed evidence showed that by virtue of statutory law of the state of Illinois, as construed by the court of last resort of that state, such provisions in a bill of lading for a shipment where delivery was to be made either within or without the state formed no part of the contract unless accepted in writing by the shipper, or unless it appeared that the shipper expressly assented thereto. There is no evidence of such acceptance or assent in the case at bar. There was no statutory provision in this state forbidding a common carrier to thus limit its liability without the express consent of the shipper, and the rule is here well settled that the shipper becomes bound by the provisions of the bill of lading which is delivered to him or to his duly authorized agent without any express assent thereto on his part either in writing or otherwise. The court evidently deemed this rule controlling in the case at bar upon the theory that, as delivery was to be made in this state, the parties must be deemed to have contracted with reference to the laws of New York. If the law of the state of Illinois governs this contract, then, as already observed, these special provisions by which the defendant attempted to limit its common-law liability are not valid and the defendant remained liable as an insurer of the goods. We are of opinion that the court erred in applying the law of the state of New York in determining what this contract was. The goods were in the state of Illinois, the shipment took place there, all negotiations for the contract were had there, the contract was there made and delivered and the shippers resided there, and the action is brought in their right by the plaintiffs, who claim an assignment of the bill of lading, and the defendant having been doing business in that state is, for the purpose of making contracts, to be deemed a resident thereof. See Liverpool Steam Co. v. Phœnix Ins. Co., 129 U. S. 397, 445–448, 9 Sup. Ct. 469, 32 L. Ed. 788.

There can be no doubt that if the goods had been destroyed by fire while in the possession of the carrier in the state of Illinois, and an action had been brought on this bill of lading, it would have been held that the provisions of the bill of lading by which the defendant attempted to limit its common-law liability were void and constituted no part of the contract, inasmuch as they were not accepted or assented to by the shipper. The terms and provisions of a given contract must be the same in the state where the contract is to be executed as in the state where it is made. Of course, it is competent for parties to contract with reference to the laws of the place of performance, and that is quite common where performance is to be wholly within

another state or country; but this contract was not wholly to be performed within the state of New York and it is not reasonable to infer that the shippers who resided and transacted business in Chicago and are presumed to have been familiar with the laws of that state relating to the question now under consideration intended to contract with reference to the law of the state of New York. This was an entire contract for the safe transportation of the goods throughout the journey and for the delivery thereof at the point of destination, and it imposed a continuous duty upon the carrier to be performed in the different states through which the route passed. Robertson v. National Steamship Co., 1 App. Div. 61, 37 N. Y. Supp. 69; Liverpool Steam Co. v. Phœnix Ins. Co., supra; 6 Cyc. 430; Ill. Cent. R. Co. v. Beebe, 174 Ill. 13, 50 N. E. 1019, 43 L. R. A. 210, 66 Am. St. Rep. 253. And see Dyke v. Erie R. Co., 45 N. Y. 113, 6 Am. Rep. 43; Faulkner et al. v. Hart et al., 82 N. Y. 413–417, 418, 37 Am. Rep. 574. The Faulkner Case, supra, states the rule to be that where a contract is to be performed in two or more states or countries the laws of each govern its interpretation with respect to that part to be performed within each particular jurisdiction respectively. But here the question is what were the provisions of the contract. It would seem too plain for argument that its provisions must be the same in every state. The case of Curtis v. D., L. & W. R. R. Co., 74 N. Y. 116, 30 Am. Rep. 271, is distinguishable upon the ground that there the question was not what contract was made by the parties, but whether a statute of Pennsylvania limiting the liability of a carrier with respect to baggage governed in an action against the carrier for a failure to deliver baggage in the state of New York under the implied contract made with the passenger by the purchase of his ticket and the checking of the baggage. That case has been followed in Williams v. C. R. R. of N. J., 93 App. Div. 582, 88 N. Y. Supp. 434, which was another baggage case, but it has been distinguished upon this ground by the Supreme Court of the United States in Liverpool Steam Company v. Phœnix Insurance Company, supra. The general rule is that the validity and construction of a contract of affreightment is to be determined by the law of the place where it is made, although a delivery of the goods is to be made in another state or country unless a mutual intention of the parties to have it governed by the laws of the other state or country be clearly shown. 2 Am. & Eng. Enc. of Law, 834; Robertson v. National Steamship Co., supra; Liverpool Steam Co. v. Phœnix Ins. Co., supra, which on this point is cited with approval in C. M. Ins. Co. v. Force, 142 N. Y. 90, 100, 36 N. E. 874, 40 Am. St. Rep. 576; Grand v. Livingston, 4 App. Div. 589, 38 N. Y. Supp. 490; affirmed 158 N. Y. 688, 53 N. E. 1125; First Nat. Bank v. Shaw, 61 N. Y. 283. See, also, Nat. Bank v. Chapman, 169 N. Y. 538, 62 N. E. 672, 57 L. R. A. 513, 88 Am. St. Rep. 614; Hachadoorian v. L. & N. R. R. Co., 128 App. Div. 171, 112 N. Y. Supp. 660. The Circuit Court of Appeals of the United States in an action against this defendant for property destroyed by the same fire has applied this rule, and held that the law of the place of shipment governs upon this precise point as to whether provisions in the bill of lading restricting the common-law liability of the carrier became a binding

part of the contract. Erie R. R. Co. v. Pond Creel Mill & E. Co. (C. C. A.) 162 Fed. 878. The action is not founded merely on a failure of the defendant to deliver the goods in New York, but it is based upon the fact that the goods were consumed by fire while in transit, which was a violation of defendant's duty to carry them safely.

We are of opinion, therefore, that the learned court erred, and that the law of the state of Illinois governs with respect to determining what the contract of shipment was.

It follows that the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.

