"It was long since laid down that fraud without damage afforded no ground for redress in a suit for damages, and, it might be added, no ground of defense or of relief in equity, except by way of rescinding an executory contract." Bigelow on Fraud, 540, 541.

Pomeroy expresses this positively, and as a familiar principle:

"Fraud without resulting pecuniary damage is not a ground for the exercise of remedial jurisdiction, equitable or legal." 2 Eq. Jurisprudence (3d Ed.) 898.

[3] The difficulty which plaintiffs say should relieve them from the burden of "overcoming the presumption that no unproved damages were sustained, which the law raises between ordinary litigants," and which difficulty they also allege stands in the way of their making any tender of the reasonable value of what they received, rests wholly upon the assumption that the defendant, and the employés in the corrupt collusion with him, will on the trial continue to collude, and still persist in their original dishonesty. It may be entirely possible that they will do so; but there would then be presented no more than the difficulty, commonly experienced, of extracting essential facts from hostile or reluctant witnesses. The damage sustained could be approximated by proof in support of allegations, such as were made in the complaint in the action in the First department (150 App. Div. 476, 135 N. Y. Supp. 52), to the effect that unnecessary materials and work were ordered, and excessive prices paid; but such allegations are in the present complaint completely omitted. The inference that defendant overcharged plaintiffs to the amount he paid in bribes is thus excluded. Indeed, any claim for any damage is excluded by the logic of the theory of their rights which plaintiffs have elected to adopt and affirm. This is that the statute has, in effect, created a new remedy or cause of action, based solely upon its violation, irrespective of actual damage, upon which they can exclusively rest. I do not think it has.

Plaintiffs' motion should be denied, with $10 costs, and leave to plaintiffs to amend their complaint, on payment of such costs; the order to be settled on notice.

---

(79 Misc. Rep. 636.)

### FISH v. DELAWARE, L. & W. R. CO.

(Supreme Court, Special Term, Saratoga County. March, 1913.)

1. CARRIERS (§ 307*)—INJURY TO CARETAKER—WAIVER OF LIABILITY—WHAT LAW GOVERNS.

    Whether a waiver of liability for injuries due to ordinary negligence of the carrier, where such waiver is in writing, signed by the injured party, a caretaker in charge of a shipment of stock, is valid, so as to constitute a defense, depends upon the laws of the state where the accident happened, and not where the contract was delivered.

    [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1252–1259, 1491; Dec. Dig. § 307.*]

2. CONTRACTS (§ 101*)—VALIDITY—PUBLIC POLICY.

    While the state will not enforce a contract, made in another state, which is in conflict with its public policy it will enforce a contract, oth-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

erwise valid, which is not in conflict with its public policy, even though invalid in the state where made, because against the public policy of that state.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 455–460; Dec. Dig. § 101.*]

### 3. CONTRACTS (§ 144*)—CONSTRUCTION—WHAT LAW GOVERNS.

Where a contract relieving a carrier from liability for injuries to a caretaker, riding free in charge of a shipment of stock, is to be performed partly in one state and partly in another, each portion is to be interpreted according to the laws of the state where it is to be performed.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 724–727; Dec. Dig. § 144.*]

Action by George D. Fish against the Delaware, Lackawanna & Western Railroad Company. Plaintiff demurs to separate defenses contained in the answer. Demurrer overruled.

Leary & Fullerton, of Saratoga Springs, for plaintiff.
Rockwood & McKelvey, of Saratoga Springs, for defendant.

VAN KIRK, J. This is a demurrer to the second and third separate defenses in the answer, on the ground that each is insufficient in law upon the face thereof. The action is brought to recover damages for injuries occasioned by defendant's negligence while plaintiff was in a car on defendant's road, at Elmira, N. Y. The second separate defense alleges that plaintiff delivered a quantity of furniture and horses to the Grand Trunk Railway Company at Jackson, Mich., on or about November 3, 1910, for transportation to Ballston Spa, N. Y., and on the delivery of said property the plaintiff signed a contract, which provided for such transportation over a joint route, in which contract was the following:

"And it is further agreed by said shipper that, in consideration of the premises and of the carriage of a person or persons in charge of said stock upon a freight train of said carrier or its connecting carriers without charge, other than the sum paid or to be paid for the transportation of the live stock in charge of which he is, that the said shipper shall and will indemnify and save harmless said carrier, and every connecting carrier, from all claims, liabilities, and demands of every kind, nature, and description by reason of personal injury sustained by said person or persons so in charge of said stock, whether the same be caused by the negligence of said carrier or any connecting carrier, or any of its or their employés, or otherwise. And George D. Fish does hereby acknowledge that he had the option of shipping the above described live stock at a higher rate of freight according to the official tariffs, classifications, and rules of the said carrier and connecting carriers, and thereby receiving the security of the liability of the said carrier and connecting railroad and transportation companies' as common carriers of the said live stock upon their respective roads and lines, but has voluntarily decided to ship same under this contract at the reduced rate of freight above first mentioned."

The third separate defense alleges that, at the time of the injuries, the plaintiff was riding free of charge in the capacity of caretaker in charge of said horses; the plaintiff having declared his desire to travel with said horses as caretaker and having signed this agreement:

"Release for Man or Men in Charge.—In consideration of the carriage of the undersigned upon a freight train of the carrier or carriers named in the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

within contract without charge, other than the sum paid for the carriage upon said freight train of the live stock mentioned in said contract, of which live stock he is in charge, the undersigned does hereby voluntarily assume all risk of accidents or damage to his person or property, and does hereby release and discharge the said carrier or carriers from every and all claims, liabilities, and demands of every kind, nature, and description for or on account of any personal injury or damage of any kind sustained by the undersigned so in charge of said stock, whether the same be caused by the negligence of the said carrier or carriers or any of its or their employés or otherwise. ·                                                                      Geo. D. Fish."

[1] The question raised by the demurrer is not as to the construction or meaning of the contract. These are plain. The question is whether or not a contract releasing a carrier from damages for personal injuries, as set forth in the two defenses, is valid. It is conceded that, if the law of Michigan controls, the contract is invalid; if the law of New York, it is valid. The law of the state of New York governs. The general rule as to the interpretation of contracts is that they are to be construed and interpreted according to the laws of the state in which they are made, unless, from their terms, it is disclosed that they were made by the parties with a view to the laws of some other state, as when it is to be performed in another state, and then in conformity to the presumed intent of the parties the law of the place of performance furnishes the rule of interpretation. Dyke v. Erie R. Co., 45 N. Y. 116, 6 Am. Rep. 43.

[2] But the state will not enforce a contract made in another state, which is in conflict with its public policy declared by statute or by its courts. The state is not bound to recognize the rule or public policy of another state, which state has an unrestricted right to determine and fix its own rules, as it may deem best for the public good, whether the legislation limits or broadens the responsibility of a carrier. Martin v. Pittsburg & Lake Erie R. R. Co., 203 U. S. 284, 294, 27 Sup. Ct. 100, 51 L. Ed. 184, 8 Ann. Cas. 87; Penn. R. R. Co. v. Hughes, 191 U. S. 477, 24 Sup. Ct. 132, 48 L. Ed. 268; Chicago, Milwaukee & St. Paul R. Co. v. Solan, 169 U. S. 133, 18 Sup. Ct. 289, 42 L. Ed. 688; The Kensington, 183 U. S. 263, 22 Sup. Ct. 102, 46 L. Ed. 190. So a contract, otherwise valid, will be recognized here, if not in conflict with our rules of public policy, even though invalid or void because against public policy in the state where made. There is no case in this state holding in such circumstances that such contract would be invalid in this state. A person who has charge of freight, and who by contract with the carrier was being carried without additional compensation, is in the same position as a mail clerk carried with mail matter without extra charge. Martin v. Pittsburg & Lake Erie R. R. Co., supra. And the person being carried has not the right to recover for injuries received, against the law of the state in which suit is brought. Id.

In a negligence action in this state brought to recover for injuries received in Pennsylvania, a statute of Pennsylvania limiting liability is not available to defendant (Dyke v. Erie R. Co., supra); nor are the decisions of another state on questions of commercial law binding upon the courts in this state, where such decisions are in conflict with the principles of the common law, even though the contract was made

in this state and to be performed in the other state where the loss occurred (Faulkner v. Hart, 82 N. Y. 413, 37 Am. Rep. 574). Where the plaintiff is a passenger, and a contract is made in another state than that in which the injuries were received, his right of action, based on the negligence of the carrier, rests upon the laws of the state where the negligence took place. Northern Pacific R. Co. v. Adams, 192 U. S. 444, 24 Sup. Ct. 408, 48 L. Ed. 513; Williams v. Central Railroad Co. of New Jersey, 93 App. Div. 582, 88 N. Y. Supp. 434, affirmed 183 N. Y. 518, 76 N. E. 1116. Whether a waiver of liability for injuries due to ordinary negligence of a carrier, where such waiver is in writing signed by the injured person, is valid, so as to constitute a defense, depends upon the laws of the state where the accident happened, not where the contract was delivered. See Smith v. Atchison, Topeka & Santa Fé R. Co., 194 Fed. 79, 114 C. C. A. 157, and Weir v. Rountree, 173 Fed. 776, 97 C. C. A. 500, 19 Ann. Cas. 1204, where the written agreements were very similar to those in the case at bar.

[3] A general principle is that:

"Where the contract is to be performed partly in one country and partly in another country, each portion is to be interpreted according to the laws of the country where it is to be performed, a rule which is fully sustained by authority." Faulkner v. Hart, 82 N. Y. 420, 37 Am. Rep. 574.

When the parties made this contract, it was not contemplated that it should be performed within the state of Michigan. It was contemplated that it should be performed in the several states from Michigan to Ballston Spa, N. Y. It has been uniformly held that a contract exempting a carrier from liability from negligence, valid at the place of its execution and delivery, will not avail as a defense when the injury occurs in a state by whose laws such contracts are declared to be void as against public policy. This rule having been adopted, that the law of the place of the injury would impose a liability upon the carrier, a contrary rule will not be adopted, when such law would protect the carrier by enforcing the contract. An attempt to distinguish a case in which this rule would impose a liability upon the carrier from one in which it would relieve the carrier was spoken of by the United States Supreme Court in the Martin Case, 203 U. S. 294, 27 Sup. Ct. 102, 51 L. Ed. 184, 8 Ann. Cas. 87, as follows:

"The contention, that because, in the cases referred to, the operation of the state laws, which were sustained, was to augment the liability of a carrier, therefore the rulings are inapposite here, where the consequence of the application of the state statute may be to lessen the carrier's liability, rests upon a distinction without a difference." Smith v. A., T. & S. F. R., supra, 194 Fed. 81, 114 C. C. A. 159.

The case of Valk v. Erie R. Co., 130 App. Div. 446, 114 N. Y. Supp. 964, is not in conflict with this holding. That was a case where a contract for the shipment of goods from Illinois to New York was made in the former state, and it was held that the construction of the contract was governed by the laws of Illinois, although the goods were destroyed by fire in New York state. By the laws of Illinois an exemption from liability for loss by fire is not binding, whether the delivery is made within or without the state, unless accepted in writing by the shipper. In this case no such acceptance was had; and the

court says that the question to be decided is simply, What was the con-- tract? And it holds that no contract was made for exemption from liability for loss by fire. In the case at bar the contract was made. It would not be enforced in the state of Michigan, because contrary to the public policy of that state. In this state it is a valid contract; it is not contrary to our public policy. I am therefore of the opinion that the contract is tied to the tort, and is available for a defense in an action tried in this state to recover for ordinary negligence which occurred in this state. The demurrer is therefore overruled.

At the same time a motion is made requiring the plaintiff to reply to the two affirmative defenses, in case the demurrers are overruled. I think the plaintiff should be required to reply. An order may therefore be prepared overruling the demurrer, with costs, and plaintiff must make reply to the said two defenses within 20 days.

Ordered accordingly.