"In Eyster v. Gaff, 91 U. S. 525 [23 L. Ed. 403], Mr. Justice Miller said: 'The opinion seems to have been quite prevalent in many quarters at one time, that the moment a man is declared bankrupt, the District Court which has so adjudged draws to itself by that act not only all control of the bankrupt's property and credits, but that no one can litigate with the assignee contested rights in any other court, except in so far as the Circuit Courts have concurrent jurisdiction, and that other courts can proceed no further in suits of which they had at that time full cognizance; and it was a prevalent practice to bring any person who contested with the assignee any matter growing out of disputed rights of property, or of contracts, into the bankrupt court by the device of a rule to show cause, and to dispose of their rights in a summary way. This court has steadily set its face against this view.'"

I conclude therefore that this court has power to pass the account of the receiver and to make an allowance to him for his services up to the time of the adjudication of bankruptcy, so far as they have been beneficial to the bankrupt estate, also to make allowances to his attorneys for services beneficial to the bankrupt estate.

[2] As to the attorneys who procured the appointment of the receiver, I think they are not entitled to any allowance, which shall constitute a lien or preferential charge against the assets, but they may prove their claim as an unpreferred claim in the bankruptcy court. Randolph v. Scruggs, supra, 190 U. S. at page 539, 23 Sup. Ct. 710, 47 L. Ed. 1165.

A careful consideration of the account and report submitted by the receiver clearly indicates that his services and those of his attorneys were of great benefit to the bankrupt estate. By the exercise of prompt attention and good business judgment the property coming under the receiver's control was not only protected from waste, but was rendered productive at a critical time, and many difficult and unusual questions of conflicting rights growing out of obligations and contracts were settled and disposed of without expensive litigation. For these services I think an allowance to the receiver of $2,000 would be appropriate, together with an allowance to him of a similar amount as compensation for the services of his attorneys, of which last-mentioned sum $150 should be paid to Rosenberg & Levis and the balance to Arnon L. Squiers.

---

(158 App. Div. 92.)

### FISH v. DELAWARE, L. & W. R. CO.

(Supreme Court, Appellate Division, Third Department.　September 10, 1913.)

1. STIPULATIONS (§ 14*)—EFFECT—AMENDMENT OF PLEADING.

　　In an action for personal injuries, a concession on the hearing of a demurrer to defenses alleging a release of liability for injuries in consideration of a reduced rate of transportation, that if the law of Michigan controlled such contract was invalid and that if the law of New York controlled it was valid, did not operate to so amend the answer as to allege that the contract was invalid under the laws of Michigan.

　　[Ed. Note.—For other cases, see Stipulations, Cent. Dig. §§ 24–37; Dec. Dig. § 14.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. PLEADING (§ 214*)—DEMURRER—ADMISSIONS—CONCLUSIONS OF LAW.

A demurrer does not admit an allegation of the pleading demurred to, that the law of another state as construed and enforced by the courts of that state is to a certain effect, nor does it admit conclusions of law.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 525–534; Dec. Dig. § 214.*]

3. CONTRACTS (§ 2*)—LAW GOVERNING.

The law of the forum furnishes prima facie the rule of decision in an action, and if either party wishes the benefit of the lex loci contractus he must aver and prove it.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 2, 41, 145; Dec. Dig. § 2.*]

4. EVIDENCE (§§ 35, 80*)—JUDICIAL NOTICE—PRESUMPTIONS—LAWS OF OTHER STATES.

The courts of this state cannot take judicial notice of the laws of a foreign state, and in the absence of proof its laws will be presumed to be in accordance with our own.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 35, 51, 101; Dec. Dig. §§ 35, 80.*]

5. CARRIERS (§ 218*)—LIABILITY FOR INJURIES—RELEASE—VALIDITY.

A contract for the transportation of live stock by which the shipper, in consideration of his free transportation as caretaker of such stock, released the carrier of liability for any injury sustained by him through the carrier's negligence, is valid under the laws of this state, especially where such contract is a part and parcel of the tariffs, rules, regulations, and classifications of the carrier, published and filed pursuant to the laws of the United States regulating interstate commerce.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 674–696, 927, 928, 933–949; Dec. Dig. § 218.*]

6. STIPULATIONS (§ 7*)—ORAL STIPULATIONS IN OPEN COURT.

Where, in an action against a carrier for injuries, on the hearing of a demurrer to defenses alleging that plaintiff in consideration of his free transportation as caretaker of live stock shipped by him from a point in Michigan to a point in New York, released the carrier of liability for injuries, though caused by its negligence, it was conceded in open court by the counsel for the respective parties that if the law of Michigan controlled the contract was invalid, while if the law of New York controlled it was valid, this concession, although constituting a somewhat informal stipulation, would be given the full effect contemplated by the parties.

[Ed. Note.—For other cases, see Stipulations, Cent. Dig. § 14; Dec. Dig. § 7.*]

7. APPEAL AND ERROR (§ 533*)—RECORD—MATTERS TO BE INCLUDED.

Under the amendment of 1910 of the General Rules of Practice, on an appeal to the Appellate Division, the opinion of the court below is a part of the record.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2339, 2400; Dec. Dig. § 533.*]

8. CONTRACTS (§ 2*)—VALIDITY—LAW GOVERNING.

The validity of ordinary commercial contracts is to be determined by the law of the place where the contract was executed, unless it can fairly be said that the parties at the time of its execution clearly manifested an intention that it should be governed by the laws of another state.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 2, 41, 145; Dec. Dig. § 2.*]

9. CARRIERS (§ 203*)—LIABILITY FOR INJURIES—RELEASE—VALIDITY.

Where a shipper contracted for the transportation of live stock from a point in Michigan to a point in New York over the lines of the initial car-

rier and certain connecting carriers, no contractual relation existed between the shipper and a connecting carrier to which the property was delivered at Buffalo until it was received by such company for transportation, and hence the validity of a provision of the contract releasing the carrier from liability for injuries to the shipper, though caused by the carrier's negligence, in consideration of the shipper's free transportation as caretaker, was governed, as to the negligence of such connecting carrier, by the laws of this state, as such must be presumed to have been the intention of the parties when the contract was executed.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 203.*]

Appeal from Trial Term, Saratoga County.

Action by George D. Fish against the Delaware, Lackawanna & Western Railroad Company. From an interlocutory judgment (79 Misc. Rep. 636, 141 N. Y. Supp. 245) overruling a demurrer to the second and third defenses set forth in the answer, plaintiff appeals. Affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Leary & Fullerton, of Saratoga Springs, for appellant.
Rockwood & McKelvey, of Saratoga Springs, for respondent.

LYON, J. The single question involved upon this appeal is as to the validity within this state of a clause in a contract for transportation from a point within a sister state to a point within this state, and of a release executed concurrently therewith, both of which were invalid in the state where executed but valid when executed within this state, exempting a common carrier from liability to a person being transported as a caretaker, who was injured while traveling over the line of a connecting carrier wholly within this state, through the negligence of such connecting carrier.

The action was brought to recover damages on account of personal injuries alleged to have been sustained by the plaintiff at the city of Elmira, N. Y., by reason of the negligence of the defendant while the plaintiff was riding as a passenger upon one of its trains; the plaintiff alleging that at the time he was injured he was traveling upon transportation purchased at Jackson, Mich., entitling him to travel as a passenger from that place to Ballston Spa, N. Y., by way of defendant's railroad from Buffalo to Binghamton.

The clauses of the answer demurred to allege that at the time of receiving any injuries, the plaintiff, who had shipped at Jackson, Mich., consigned to Ballston Spa, two horses and other property, was traveling upon what is commonly known as a drover's pass, pursuant to a contract and release executed by him in order to obtain a reduced rate of transportation, by which he voluntarily assumed all risk of personal injury, and released the contracting railroad as well as all connecting carriers, of which defendant was one, from all liability on account of any personal injuries which he might sustain, whether caused by the negligence of the contracting railroad or of any connecting carrier or otherwise.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

To these defenses the plaintiff demurred upon the ground that they were insufficient in law upon the face thereof. From the order overruling the demurrer this appeal has been taken.

[1] If the appeal is to be decided upon the defenses demurred to as they stood at the time the demurrer was served and as they appear upon the record, unquestionably the judgment overruling the demurrer must be affirmed. The answer contains no allegation that under the decisions of the courts of Michigan a contract and release of this character are invalid, and the concession hereinafter stated did not operate to so amend it.

[2] Moreover, a demurrer does not admit an allegation of the pleading demurred to, that the law of another state as construed and enforced by the courts of that state is to a certain effect, nor does it admit conclusions of law. Knickerbocker Trust Co. v. Iselin, 185 N. Y. 54, 77 N. E. 877, 113 Am. St. Rep. 863; Park & Sons v. National Druggists' Association, 175 N. Y. 1, 67 N. E. 136, 62 L. R. A. 632, 96 Am. St. Rep. 578.

[3, 4] It is the rule that the lex fori furnishes, prima facie, the rule of decision, and that if either party wishes the benefit of the lex loci contractus he must aver and prove it. We cannot take judicial notice of the laws of a foreign state, and in the absence of proof its laws will be presumed to be in accordance with our own. Monroe v. Douglass, 5 N. Y. 447; Latham v. De Loiselle, 3 App. Div. 525, 38 N. Y. Supp. 270, affirmed 158 N. Y. 687, 53 N. E. 1127; Humphreys v. Chamberlain, 1 Code R. (N. S.) 387.

[5] Under the decisions of this state the contract and release are valid. Hodge v. Rutland R. Co., 112 App. Div. 142, 97 N. Y. Supp. 1107, decision amended 115 App. Div. 881, 100 N. Y. Supp. 764, and affirmed 194 N. Y. 570, 88 N. E. 1121.

[6] It appears, however, that upon the trial of the demurrer the counsel for the respective parties in open court conceded that, "if the law of Michigan controls, the contract is invalid; if the law of New York, it is valid." And this concession is recognized and confirmed in the briefs submitted to us by the respective counsel. The concession was evidently entered into as furnishing the most expeditious and least expensive method of having determined the vital question involved in the action as to whether the legality of the contract and release is to be determined by the law of the state of Michigan or by the law of the state of New York. This question is not before us for determination, unless pursuant to the above-stated concession. In the case of Keene v. Newark Watch Case Material Co., 81 App. Div. 48, 50, 80 N. Y. Supp. 859, 860, the court refused to affirm the judgment appealed from upon the opinion of the court below, because it fixed an important date by a concession made upon the argument of a demurrer; the court saying:

"The sufficiency of a pleading to which a demurrer is interposed should not be determined on a concession which forms no part of the record, and is not incorporated in the pleading by an appropriate amendment."

[7] But since this decision was rendered, the opinion of the court below has been made as to this court a part of the record by the amend-

ment of 1910 of the General Rules of Practice. While the concession constituted perhaps a somewhat informal stipulation, yet it clearly evidenced the intention of the parties that, in the event of the court deciding that the validity of the contract and release are controlled by the law of Michigan, they should be held to be invalid and the demurrer sustained, and that, in the event of the court deciding that they are controlled by the law of New York, the contract and release should be held to be valid and the judgment sustaining the demurrer affirmed. The parties to the action had the right to make such a stipulation which should be binding upon them, and which should be enforced by the court at Special Term, and by this court as well.

"Parties by their stipulations may in many ways make the law for any legal proceedings to which they are parties, which not only binds them, but which the courts are bound to enforce,  *  *  *  and all such stipulations not unreasonable, not against good morals, or sound public policy, have been and will be enforced, and generally all stipulations made by the parties for the government of their conduct, or the control of their rights in the trial · of a cause or the conduct of a litigation, are enforced by the courts." Matter of Petition of N. Y., L. & W. R. R. Co., 98 N. Y. 447; Crouse v. McVickar, 207 N. Y. 213, 100 N. E. 697; Cowenhoven v. Ball, 118 N. Y. 231, 23 N. E. 470.

"That parties may stipulate what the law is that governs their dispute, as well as what the facts are from which it arises, cannot be doubted; and the courts should and will give as complete effect to the former as to the latter class of stipulations." Matter of Cullinan, 113 App. Div. 485, 99 N. Y. Supp. 374.

In the case of Dubuc v. Lazell, Dalley & Co., 182 N. Y. 482, 75 N. E. 401, plaintiff sought to avoid the effect of a verbal stipulation made in open court, which drew from the court the following statement:

"We think the stipulation was one which counsel had a right to make, but even if there were doubt upon that subject we think defendant's counsel is estopped by his conduct and laches from repudiating his stipulation at this late day."

In the case at bar neither counsel has sought to avoid the effect of his stipulation, but, as before stated, both have recognized and confirmed it, and we think we ought to give it the full effect contemplated by the parties and decide upon the merits the question intended to be submitted.

The first defense demurred to alleges that the Grand Trunk Railway Company, the Delaware, Lackawanna & Western Railroad Company, defendant herein, and the Delaware & Hudson Company, as common carriers, engaged in interstate commerce, and subject to the laws of the United States regulating the same, established a joint route at a rate of compensation pursuant to lawful tariffs, rules, and classifications theretofore established, published, and filed in accordance with the laws of the United States regulating interstate commerce, and that the contracts entered into between the Grand Trunk Railway Company and the plaintiff for the carriage of property over such joint route from Jackson, Mich., to Ballston Spa, N. Y., were for the benefit of all said common carriers and were part and parcel of the said tariffs, rules, regulations, and classifications, and that pursuant thereto and at reduced rates, because of the acceptance of said contracts by the

plaintiff, said common carriers transported said property between said points, carrying plaintiff free of charge as caretaker of the horses, and that such contract was as follows:

"And it is further agreed by said shipper, that in consideration of the premises and of the carriage of a person or persons in charge of said stock upon a freight train of said carrier or its connecting carriers without charge, other than the sum paid or to be paid for the transportation of the live stock in charge of which he is, that the said shipper shall and will indemnify and save harmless said carrier and every connecting carrier, from all claims, liabilities and demands of every kind, nature and description by reason of personal injury sustained by said person or persons so in charge of said stock, whether the same be caused by the negligence of said carrier or any connecting carrier, or any of its or their employés, or otherwise.

"And Geo. D. Fish does hereby acknowledge that he had the option of shipping the above-described live stock at a higher rate of freight according to the official tariffs, classifications and rules of the said carrier and connecting carriers and thereby receiving the security of the liability of said carrier and connecting railroad and transportation companies as common carriers of the said live stock upon their respective roads and lines, but has voluntarily decided to ship same under this contract at the reduced rate of freight above first mentioned."

The second defense demurred to alleges that at the time the plaintiff claims to have received personal injuries he was riding free of charge in a freight car as a caretaker of two horses, pursuant to his desire to so travel, having entered into the following written agreement with the common carriers who were engaged to transport the horses, of which carriers defendant was one:

### "Release for Man or Men in Charge.

"In consideration of the carriage of the undersigned upon a freight train of the carrier or carriers named in the within contract without charge, other than the sum paid for the carriage upon said freight train of the live stock mentioned in said contract, of which live stock he is in charge, the undersigned does hereby voluntarily assume all risk of accidents or damage to his person or property and does hereby release and discharge the said carrier or carriers from every and all claims, liabilities, and demands of every kind, nature and description for or on account of any personal injury or damage of any kind sustained by the undersigned so in charge of said stock, whether the same be caused by the negligence of the said carrier or carriers or any of its or their employés or otherwise.                                     Geo. D. Fish."

A similar contract and release were held to be invalid in the state of Michigan in the case of Weaver v. Ann Arbor R. Co., 139 Mich. 590, 102 N. W. 1037, 5 Ann. Cas. 764, which was an action brought to recover damages on account of personal injuries sustained by plaintiff, who was being transported within the state on a drover's pass, having executed a contract and release in practically the terms of the contract and release in the case at bar. The court held that the plaintiff was rightfully riding as a passenger for hire, and that the release executed by him was invalid upon grounds of public policy, and that the defendant as a common carrier of passengers could not lawfully stipulate for exemption from responsibility for its own negligence. Upon the other hand, it was held by the Supreme Court of Pennsylvania, in an action brought by an employé of the defendant who was traveling upon a free pass issued to him by the defendant in the state of New Jersey, in which state an ex-

emption clause contained in the pass was valid, who on his way to Elmira, N. Y., was injured in the state of Pennsylvania, in which state such exemption clause was invalid:

"It is to be presumed that parties enter into a contract with reference to the laws of the place of performance, and unless it appears that the intention was otherwise those laws determine the mode of fulfillment and obligation and the measure of liability for its breach." Burnett v. Pennsylvania R. Co., 176 Pa. 45, 34 Atl. 972.

Also:

"Where a contract containing a stipulation limiting liability for negligence on the part of a common carrier is made in one state, but with a view to its performance by transportation through or into one or more other states, it should be construed in accordance with the law of the state where its negligent breach causing injury occurs." Hughes v. Pennsylvania R. Co., 202 Pa. 222, 51 Atl. 990, 63 L. R. A. 513, 97 Am. St. Rep. 713.

In some other states such contract and release have been held to be valid and in other states to be invalid, but a further review of the decisions of the various states in which the question has been passed upon would be of little benefit. However, it is interesting to note the decision in 1873 of the United States Supreme Court in the case of Railroad Company v. Lockwood, 17 Wall. 357, 21 L. Ed. 627, which was an appeal from the Circuit Court for the Southern District of New York. Lockwood was injured through the negligence of the New York Central Railroad Company, while traveling on a drover's pass from Buffalo to Albany. The court on appeal held that the railroad company could not lawfully stipulate exemption from responsibility for its own negligence, and that the release was void and Lockwood entitled to recover damages. This decision, however, has not been followed by the courts of our state; but, as before observed, such contract and release when executed within this state are held to be valid. Hodge v. Rutland R. Co., supra. And it would seem that such holding of the courts of our state, especially at the present day, in view of the Interstate Commerce Act, and the Public Service Commissions Law, regulating the rates for the transportation of passengers and freight, is founded in reason and justice.

In the case of Cappel v. Weir, 46 Misc. Rep. 441, 92 N. Y. Supp. 365, which was an action against an express company to recover the value of property received by it at Philadelphia, Pa., for transportation to New York City, and through the negligence of the defendant not delivered at the latter place, the court held:

"While in Pennsylvania a carrier may not by contract limit its liability for negligence, the rule only applies when the negligent act occurs in some jurisdiction whose laws forbid such limitation. But where, as in this state (New York), such limitation is valid, a contract made by an express company in Philadelphia, Pa., to deliver goods at a particular address in this state, limiting its liability to $50, will be enforced by the courts of this state in an action for failure to deliver the goods."

In the case of International Text-Book Co. v. Connelly, 206 N. Y. 188, 200, 99 N. E. 722, 727 (42 L. R. A. [N. S.] 1115), the court said:

"We think that the facts stated show that the contract wherever made was to be performed by both parties substantially in this state and that it should be governed by its laws."

[8] It is undoubtedly the law of this state that the validity of ordinary commercial contracts is to be determined by the law of the place where the contract was executed, unless it can fairly be said that the parties at the time of its execution clearly manifested an intention that it should be governed by the laws of another state. Union National Bank v. Chapman, 169 N. Y. 538, 62 N. E. 672, 57 L. R. A. 513, 88 Am. St. Rep. 614; Grand v. Livingston, 4 App. Div. 589, 38 N. Y. Supp. 490.

The Grand Trunk Railway Company, as well as the defendant, being engaged in interstate commerce, was required by the Interstate Commerce Act to establish through routes and just and reasonable rates applicable thereto, and the answer herein alleges that said contracts were part and parcel of the said tariffs and of the rules, regulations, and classifications of the Grand Trunk Railway Company, as well as those of the Delaware, Lackawanna & Western Railway Company, published and filed pursuant to the laws of the United States regulating interstate commerce, and in connection with and as a part of said tariffs. It was this classification so made and filed by the defendant of which this contract and release were parts, under which the plaintiff was agreed to be carried by the defendant over its road from Buffalo through Elmira to Binghamton.

The plaintiff knew at the time he executed the contract that he was to be transferred to defendant's railroad at Buffalo, as in his complaint he alleges that at Jackson, Mich., on or about November 4, 1910, he "purchased and paid for transportation * * * entitling him to ride from Jackson, Mich., to Ballston Spa, N. Y., and over defendant's lines between Buffalo, N. Y., and Binghamton, N. Y., and did thereupon enter as a passenger a car of defendant at Buffalo, N. Y., and was transported over defendant's said lines as a passenger on one of defendant's cars and train from Buffalo, N. Y., to Elmira, N. Y."

The plaintiff must be presumed to have known the contents of the contract and release, both of which he signed, and which in express terms extended to and exempted every connecting carrier from liability for any personal injuries which might be sustained by him, and that the same constituted a contract between himself and defendant upon his being transferred to defendant's car and railroad line at Buffalo.

[9] "In the case of transportation of property over several railroads constituting a continuous line, none of the roads can be said to be agents of the owner; each is exercising an independent employment, and is a contractor with the owner, the contract being either express or such as the law implies." Sherman et al. v. Hudson R. R. Co., 64 N. Y. 254, 260.

I think that no contractual relation existed between the plaintiff and defendant, and that the contract and release did not become binding as between them until the plaintiff was received by

the defendant at Buffalo for transportation over its line, and hence that the validity of the contract and release as between the plaintiff and defendant is governed as to the negligence of the defendant by the laws of the state of New York, and that such must be presumed to have been the intention of the parties at the time the contract and release were executed.

I have not overlooked the cases cited by the appellant. Dyke v. Erie Ry. Co., 45 N. Y. 113, 6 Am. Rep. 43; China Mutual Ins. Co. v. Force, et al., 142 N. Y. 90, 36 N. E. 874, 40 Am. St. Rep. 576; Grand v. Livingston, supra; Union National Bank v. Chapman, supra; and Valk v. Erie R. Co., 130 App. Div. 446, 114 N. Y. Supp. 964. In each of these cases, so far as they relate to the question of validity of a clause of exemption in a contract for transportation, the consignee was a through carrier, and no delivery was made to a connecting carrier, and nothing appeared from which it might be inferred that it was the intention of the parties when entering into the contract that any law other than that of the state in which the contract was executed should prevail during the performance of the contract.

We more willingly reach the conclusion that the validity of the contract in question is to be determined as between the plaintiff and defendant by the laws of this state, for the reason that it would be an injustice to allow the plaintiff, who appears to have intelligently executed the contract and release, to repudiate his contract, after having received the benefits therefrom in free transportation for himself and a reduced rate of transportation for his property over defendant's line.

The judgment overruling the demurrer should be affirmed. All concur.